People of the State of Illinois, Plaintiff-Appellee, v. Frederick Nunn, Defendant-Appellant.

Gen. No. 49,655.

First District, Fourth Division.
September 24, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Anthony Haswell, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Donald J. Veverka, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

At a bench trial defendant was convicted of theft of an automobile under Section 16–1 of the 1961 Criminal Code.[1] Ill Rev Stats 1963 c 38, § 16–1. He was sentenced to the penitentiary for a term of two to five years. Defendant contends on this appeal that the evidence was insufficient to support a conviction under Count I (§ 16–1(a)(1)) and that Count II (§ 16–1(d) (3)) does not charge a crime and is therefore insufficient at law.

It was stipulated by the parties that on February 20, 1963, a 1962 white Corvette automobile belonging to Margaret Haase and valued at approximately $4,000, was stolen from the front of a house located at 3051 South Christiana in the City of Chicago. While the record does not show when the car was found to be missing, the loss was reported to the police at or about 4:30 p. m. the same afternoon.

The entire case for the State rests upon the testimony of three police officers who were specializing in the investigation of stolen and stripped automobiles. Since the testimony of the officers is in some measure overlapping, we will combine the State's evidence into a single narrative.

On February 23, 1963, officers O'Donnell, Poremba and Ruddy were patrolling an area around the 3600 block on Lexington Avenue. At 4:35 p. m. they were attracted by a garage light behind one of the buildings on the block and proceeded to investigate. One of the officers stationed himself in the alley outside the rear overhang door, while the other two walked around to the other side where they peered into the garage through a window. The defendant, who was inside the garage, was dressed in mechanic's clothing and was working on the motor under the hood of a white

[1] The indictment also included a count charging the lesser offense of criminal trespass to a vehicle (Section 21–2), but the trial court entered no judgment as to this charge.

Corvette which the policemen recognized by the license plates as the stolen car the theft of which they had been assigned to investigate. One of the officers then knocked on the side door of the garage. The defendant immediately ran out the rear door and was apprehended by the officer who was waiting there. Without being questioned, the defendant volunteered: "I didn't steal the car, I was just going to take the motor out." In conversation with the officers he said further that he intended to remove the car's motor for the purpose of selling it; that he was taking the generator off when he was first seen by the police. The car was already partially dismantled. The motor heads were missing and the intake manifold and transmission were also gone. The right rear of the car was jacked up and resting on a ten gallon can. There were "all kinds" of nuts and bolts on the floor of the garage.

The mechanic's uniform which defendant was wearing was covered with grease. Although his hands were comparatively clean, he had on his person a pair of gloves which were also covered with grease.

The ownership of the garage was not disclosed at the trial, but the State conceded that the defendant had no interest in it.

Defendant took the stand in his own defense and testified that he did not touch the car in any way and did not remove any of the missing parts; that he "did not steal this woman's Corvette." He explained his presence in the garage as pure happenstance, testifying that he had come there by cab to help a friend remove a car (not the one involved in this case) from a snow drift. In defendant's own words, "I walked by this garage, I looks in, I see the car, I step inside the door; by that time the police opened the door and walked right in behind me."

The policemen testified to an earlier version of the incident related to them by the defendant. They said

that at the police station he had told them that he was driving down Central Park the day before his arrest when he saw a tall, skinny man park the car in the garage; that being around the neighborhood the next day he walked into the garage to have a look at it. Defendant testified at the trial, however, that he had not known the car was in the garage until he walked by and saw it on the day of his arrest. His explanation for wearing mechanic's clothes was that he was working part time as a gasoline station attendant. Defendant also testified that he worked at a manufacturing plant from 7:30 a. m. until 4:00 p. m. on the day the owner had reported at 4:30 p. m. that her car was missing. The plant was some four miles from the place where the car had been parked by the owner.

█ As to the first count of the indictment it is defendant's contention that the State has not proven him guilty beyond a reasonable doubt. Count I, which is stated largely in the language of the statute, is based on subsections (a) and (1) of section 16–1, which state:

A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner; . . . and,

(1) Intends to deprive the owner permanently of the use or benefit of the property; . . . .

A good part of defendant's brief is devoted to arguing that the evidence does not show defendant to have taken the automobile from the place at which it had been parked by the owner. This contention misses the mark, however, because section 16–1(a)(1) is not limited to the theft of property in which only the actor who initiates the wrongful asportation is guilty of the offense. A person who "knowingly obtains or exerts

470

unauthorized control over property of the owner" is the statutory description of a thief, provided only that his act is accompanied by the requisite mental state. As expressly pointed out in section 15–8 the phrase "obtains or exerts control" over property includes but is not limited to the taking or carrying away of the property. It also includes (though still not exclusively) the bringing about of a transfer of possession of the property. Ill Rev Stats (1963), c 38, §§ 15–7 and 15–8. The taking of unauthorized possession of the automobile in the instant case, therefore, need not have been on February 20, but could just as well have been on February 23 when defendant was caught in the garage by the police officers. For this reason defendant's alibi (imperfect as it was because it did not cover the whole of the period during which the car may have been stolen) was immaterial.

For the same reason we find irrelevant the arguments of the parties for and against the applicability of the proposition that unexplained possession of recently stolen property proves the initial taking. As we have stated, the key to guilt on the evidence in this case is not the original theft, but rather the subsequent unauthorized taking possession of the automobile by the defendant.

 Defendant contends that he was never in possession of the car because he was not shown to have driven it, or to have had the key to the car, or to have had "in some other fashion the present and existing means to move it around." As supporting this proposition he cites People v. Barnes, 311 Ill 559, 562, 143 NE 445, and People v. Evans, 24 Ill2d 11, 14, 179 NE2d 657. We do not agree with the argument and do not consider the cases to be in point. The car was undriveable at the time in question as some of its vital parts had been removed, and defendant was proceeding to dismember it further by taking out the motor for the

471

purpose of sale. It is hard to conceive of a more complete control or possession over a vehicle in such a condition, especially when it is recalled that defendant's act was being performed in a place away from the public eye and unknown to the owner.

Defendant also says that since it was not his garage he did not have exclusive possession and the State's proof of possession therefore fails, citing Watts v. People, 204 Ill 233, 245, 68 NE 563. While this is a point which relates essentially to circumstantial evidence of the original taking by proof of unexplained and exclusive possession of recently stolen property (a point which we have dealt with earlier), it is, nevertheless, invalid for any purpose because such possession may be exclusive and still be joint with another. People v. Wheeler, 5 Ill2d 474, 485, 126 NE2d 228.

Nor can there be any question that defendant's control over the automobile was known by defendant to have been unauthorized. The fact that the car had been stolen is not in dispute. And immediately upon fleeing the garage into the arms of a waiting policeman defendant made the telling statement (no doubt intended to be exculpatory) that he had not stolen the car but was only going to remove the motor. Certain it is, too, that the removal of a motor is about the strongest possible proof that the remover intends permanently to deprive the owner of the use and benefit of the automobile.

From the statements of the defendant, the circumstances in evidence, including defendant's attempted flight through the alley,[2] the police officers' positive testimony, and the defendant's own improbable explanation of his presence and activity in the

---

[2] Flight is a circumstance which may be considered, in connection with all the other evidence, as tending to prove guilt. People v. Lobb, 17 Ill2d 287, 295.

garage,[3] the trial judge was fully justified in finding that defendant had been proven guilty beyond a reasonable doubt. In so saying, we bear in mind, of course, that the credibility of the witnesses is a matter for the trier of facts, a proposition too well-established to warrant citation of authority.

Finally, defendant contends that Count II is insufficient as a matter of law in that it does not state an offense. The pertinent part of Count II reads:

> . . . knowingly uses and conceals property, to wit: an automobile, the property of Margaret Haase, of the value of more than one hundred fifty dollars, knowing such use and concealment will deprive said Margaret Haase permanently of the use and benefit of said property, in violation of Chapter 38, Section 16–1(d–3), of the Illinois Revised Statutes 1963, . . . .

The statute cited in the indictment provides:

> A person commits theft when he knowingly: . . .
>
> > (d) Obtains control over stolen property knowing the property to have been stolen by another, and . . .
> >
> > > (3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.

---

[3] In People v. Davis, 27 Ill2d 33, 37, 188 NE2d 43, the court said:

"When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities."

473

The scheme of the code's drafters is that the lettered subsections (a), (b), (c) and (d) describe the proscribed acts any one of which constitutes the crime of theft if performed with the mental states requisite for conviction; and that subsections (1), (2) and (3) describe such mental states or conduct from which they will be presumed. See Committee Comments to this section, SHA, c 38, § 16–1.

Comparing the statutory definition (section 16–1 (d)(3)) with the allegations of Count II, we find that the only acts set forth in the charge are those set forth in subsection (3) as constituting conduct from which the requisite mental state will be presumed. The count does not charge the act which (apart from the mental state) constitutes the crime itself as set forth in subsection (d).

■ ■ Count II is, therefore fatally incomplete as a charge expressly brought under section 16–1(d)(3) which it cites. Whether or not the language could be construed as stating an offense under section 16–1(a) (1), we do not decide, because the conviction under Count I renders conviction under an additional count for the same act of no consequence. People v. Cioppi, 322 Ill 353, 361, 153 NE 604.

The judgment and sentence of the Circuit Court are affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.