The People of the State of Illinois, Plaintiff-Appellee, *v.* Robert Helm, Defendant-Appellant.

(No. 55483;

First District (5th Division)—March 9, 1973.

Gerald W. Getty, Public Defender, of Chicago, (John E. Hughes, Herbert Becker, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, William C. Braverman, and James Sternik, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSES CHARGED*

Theft. Ill. Rev. Stat. 1969, ch. 38, par. 16—1(a)(1). Criminal Trespass to Vehicle. Ill. Rev. Stat. 1969, ch. 38, par. 21—2.

*JUDGMENT*

At a bench trial, defendant was found guilty of theft and sentenced to a term of one to ten years.

*CONTENTIONS RAISED ON APPEAL*

1. Defendant was not proved guilty beyond a reasonable doubt.

2. Defendant's statements were admitted into evidence in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602.

*EVIDENCE*

*Donald Moss*, for the State:

He was the owner of a 1970 Ford Fairlane 500 valued at approximately $2900. At about 6:45 A.M. on March 18, 1970, he went outside to start

his car and then returned to his house. Ten minutes later, when he returned to his car, it was missing. On March 21, 1970, he went to the police station at 11th and State Streets and identified his car as the one which the police had recovered from defendant. He had not given defendant permission to drive the car.

*Philip Dienethal,* for the State:

He was a police officer assigned to the 1st District Technical Unit. During the early morning hours of March 20, 1970, he had a conversation with an informer at the corner of 11th and Michigan in Chicago. The informer told him about a stolen vehicle which was about to be used in a robbery. He saw the car parked nearby on Michigan Avenue and put it under surveillance. He saw three people enter the vehicle at about 2:00 A.M. and drive north on Michigan Avenue, make an illegal U-turn, and then proceed south. He stopped the car after following it a short distance, and asked the driver to produce identification. Defendant produced a valid driver's license, but when asked about the ownership of the car, he stated that it belonged to a friend. He didn't know the friend's name and when asked where the friend lived, he said he didn't know that either. He said he usually saw the friend standing on the corner of Division Street and he would give the car back when he saw him. The officer then asked defendant and his two companions to accompany him to the 1st District Station to straighten out the question of ownership. They agreed to go along to get the question cleared up. At the station, the officer found the car registered to Donald Moss, and wired to the car were stolen license plates belonging to Frank Gargon. From police records, he determined that the car had been stolen March 18, 1970. Approximately 45 minutes after they arrived at the station, defendant was placed under arrest.

*Martie Trotter,* for the defense:

She was acting librarian at Cermak Memorial Hospital which is associated with the House of Correction. Her duties there placed her in charge of records at the hospital. Defendant had been an inmate there from June 9, 1969, until March, 1970. According to her records, the earliest he could have been released was March 18.

*John Stewart,* for the defense:

He was the police lieutenant in charge of receiving and discharge at the House of Correction and kept records on the release of prisoners. According to his records, defendant was released on March 18, 1970. The usual discharge time is 11:00 A.M. on the day of release, but he could not say if defendant had been released at that hour or some other time.

*OPINION*

Defendant argues that he was not proved guilty beyond a reasonable doubt because the indictment charges him with an offense which took place before he was released from jail on the morning of March 18, 1970. He maintains that all of the evidence adduced at trial related to occurrences which took place on March 20 and that the evidence did not prove that he either took the car himself on the 18th or knew the car had been stolen on that date.

■■ Ill. Rev. Stat. 1969, ch. 38, par. 16—1(a)(1) states that a person commits theft when he knowingly:

> "(a) Obtains or exerts unauthorized control over property of the owner; * * * and
>
> (1) Intends to deprive the owner permanently of the use or benefit of the property; * * *."

Also, par. 15—8 (Ill. Rev. Stat. 1969, ch. 38, par. 15—8) states that "'obtains or exerts control' over property, includes but is not limited to the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of property." Thus, one is a thief when he knowingly exerts unauthorized control through mere possession of the property, intending permanently to deprive the owner of its use. A similar case arose in *People v. Nunn*, 63 Ill.App.2d 465, 212 N.E.2d 342, where defendant argued that the evidence did not show that he had taken the car from the place where it had been parked by the owner. We held there that defendant's alibi as to the time the car was taken, was immaterial because the unauthorized possession need not begin on the day of original theft but may be shown by possession at the time of arrest.

■■ In the present case, even though no one stated the exact time of defendant's release from jail on the 18th, it might be considered subject to reasonable doubt that defendant was the person who initially stole the car. However, at the time of arrest, defendant was driving the car which then bore stolen license plates; defendant was unable to give the name of the person who had lent him the car, tell where that person lived, or convincingly explain how he would return the car to the unnamed person who was supposedly the owner. The facts and his questionable explanation of possession, coupled with the information supplied by the informer, raise a presumption of defendant's guilt and are sufficient to support his conviction. *People v. Litberg*, 413 Ill. 132, 108 N.E.2d 468. See *People v. Davis*, 69 Ill.App.2d 120, 216 N.E.2d 490.

■■ Defendant also argues that his conviction is based purely on circumstantial evidence since no one saw him steal the car and no one saw him change the license plates. It is well established that a conviction

may rest on circumstantial evidence alone, and although it must not produce any reasonable theory which could support defendant's innocence, the trier of fact is not required to search for a series of possible "explanations compatible with innocence, and elevate them to the status of a reasonable doubt." (*People v. Huff*, 29 Ill.2d 315, 320, 194 N.E.2d 230, 232.) Without searching further than defendant's own explanation, the trial court apparently found his story less than credible and so insubstantial that it did not raise a reasonable doubt as to his guilt. Thus, from the attendant circumstances, it may be inferred that defendant knew the car had been stolen, that he was exercising unauthorized control over the property while driving the car without the owner's permission, and that by his actions he intended to deprive the owner of the car's use permanently.

Next, defendant maintains that his statements to the police prior to his arrest were admitted into evidence in violation of the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602. He argues that because the informer told the officer that the car was stolen, then as soon as defendant's interrogation turned from the question of an illegal U-turn to accusatory questions of ownership, defendant should have been warned of his *Miranda* rights since at that time defendant was in custody. We cannot agree.

■■ The *Miranda* decision states that when questioning a suspect during custodial interrogation, certain procedural safeguards must be used to protect the person's privilege against self-incrimination. (*People v. Milligan*, 107 Ill.App.2d 58, 245 N.E.2d 551.)

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (384 U.S. 436, 444.)"

Later in the opinion the court explained why it felt there was a difference between custodial and on-the-scene investigations.

> "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. * * * In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. (384 U.S. 477-8.)"

There is general agreement that *Miranda* does not provide a hindrance to police officers' usual investigative techniques which include questioning citizens on the scene to determine if a crime had been or was being committed. *Lowe v. United States*, 407 F.2d 1391 (9th Cir. 1969); *People v. Parks*, 48 Ill.2d 232, 269 N.E.2d 484, *cert.* denied 404 U.S. 1020, 92 S.Ct. 692; *People v. Thompson*, 48 Ill.2d 41, 268 N.E.2d 369.

In *Allen v. United States,* 390 F.2d 476 (D.C. Cir. 1968), mod. 404 F.2d 1335, the police officer stopped a car and asked the driver to produce his license and registration. The driver could produce neither. The officer then noticed a passenger who looked as if he had been beaten. He than asked the driver who owned the car, where it came from, and where the driver had obtained the car. The driver's answers were admitted into evidence as "on-the-scene" exceptions to *Miranda.*

In *People v. Ricketson,* 129 Ill.App.2d 365, 264 N.E.2d 220, after defendant was stopped for a traffic violation, he was questioned at his car about other possible offenses because of suspicious circumstances existing at the time he was stopped. The court found that until such time as probable cause exists for an arrest for a specific offense, the detention of a person for a traffic violation and the questioning of him about other crimes may be conducted without first giving the warnings set forth in *Miranda.* See *People v. Parks,* 48 Ill.2d 232, 269 N.E.2d 484, *cert.* denied 404 U.S. 1020.

■■■ Generally, the exception applies where there has been a "complete absence of the element of coercion, actual or potential, or police dominance of the individual's will  *  *  *." ( *United States v. Gibson,* 392 F.2d 373, 376 (4th Cir. 1968); *People v. Thompson,* 48 Ill.2d 41, 268 N.E.2d 369.) However, the line distinguishing between investigation and custodial interrogation is often difficult to draw. See *People v. Bradford,* 434 S.W.2d 497. As the court stated in the *Allen* case:

> "Whether police have left the channel of 'investigation' and run onto the shoals of 'custodial interrogation' cannot be determined by reference to some chart clearly designating the various lights, bells, buoys and other channel markers.  *  *  * We think the relative routineness of an inquiry is a material indicator that the police are still in a state of investigation." ( 390 F.2d 476, at 478-479.)

Various attempts have been made to set down a test for determining when investigation stops and custody begins. (See 31 A.L.R.3d 565.) *Miranda* spoke of custody as the time when the individual was "deprived of his freedom of action in any significant way." (384 U.S. at p. 444.) *Lowe v. United States,* 407 F.2d 1391 (9th Cir. 1969) reasoned that an objective standard should be applied by the trial judge when deciding whether the individual was being deprived of his freedom and thus in custody at the time the questions were asked. There, the court held that a reasonable man standard should be applied to determine if a defendant reasonably believed that he was not free to leave the scene of the questioning or was merely acting voluntarily. We believe the standard is a good one and when applied to the present case, results in a finding that

defendant, at the time he was stopped for the traffic violation and then asked about the ownership of the car he was driving, could not reasonably have believed he was in custody until after he went with the officer to the police station and was found to have been driving a stolen vehicle. This lack of pressure is particularly apparent in the present case, because defendant was questioned on a public street, in his own car, in the presence of two of his friends, and all went voluntarily with the officer to the police station. We find the officer did not coerce defendant in any way and was only asking routine questions necessary for a proper investigation of whether a crime, (other than the traffic violation) had been committed. Thus, defendant was not in custody until placed under arrest at the station, and any statements he made during the investigation, prior to being taken into custody, were properly admitted into evidence since no *Miranda* warnings were required at that time.

The judgment of the circuit court is affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.