THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GORDON D. MERTENS, SR., *et al.*, Defendants-Appellants.

Second District   No. 77-384

Opinion filed October 30, 1979.

Arthur H. Zimmerman, of Zimmerman & Zimmerman, of Chicago, and James R. Truschke, of Whelan, Truschke and Associates, of Arlington Heights, for appellants.

William J. Cowlin, State's Attorney, of Woodstock (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court.

Defendants Gordon Mertens, Sr., his wife Marcella Mertens, and his sons Robert Mertens, and Gordon Mertens, Jr., appeal their convictions by a McHenry County jury of nine counts of theft.

On December 12, 1974, a search warrant was issued for the defendants' home located in Barrington Hills, Illinois. The warrant was executed that day and more than 400 items were seized as evidence. Two more warrants were issued and executed within the next three days and hundreds of other items were taken from the defendants' home.

Each defendant was subsequently charged in a nine-count

indictment with nine separate offenses of theft. The defendants were not charged with the actual taking of the property in question, but with obtaining or exerting unauthorized control over property of the owner with the intent to deprive the owner permanently of the use or benefit of the property. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1).) The theory of the State was that all defendants were in possession of all the articles which were alleged to be stolen since they could not live together in their home with so many articles without all being part of a plan to possess stolen property.

Defendants filed a motion to quash the three search warrants. This motion alleged that the warrants were improperly issued as the affidavit in the first warrant did not supply probable cause for its issuance and that all three warrants did not set out a description of the items which were seized with sufficient particularity. After a hearing, on January 23, 1976, the warrants themselves were found to be proper. However, the court noted that it did not reach the question of whether in the execution of any of these warrants the police had exceeded their authority under the warrants. A second motion to suppress evidence was made more than a year later on April 11, 1977, the date set for trial. This motion was denied on the basis that the issues presented had already been determined in the January 23, 1976, proceeding. A third motion to suppress was filed on April 20, 1977, after the jury had been sworn but before any evidence had been presented. This motion, which was based solely on the scope of the searches, was denied as untimely.

The defendants also moved prior to the trial to compel compliance with the court's discovery orders. This motion was coupled with a request for a continuance of the impending trial date. On April 18, 1977, defense counsel again moved to stay the proceedings indicating that he was not ready for trial due to the failure of the State to comply with discovery. Also prior to trial defendants filed a motion seeking severance of the counts of the indictment as misjoined and of the defendants because of prejudice which would be caused to them by being tried together. This motion was denied.

At trial, police officers who were involved in the searches of defendants' home testified as to the details of those searches and the items taken. Other prosecution witnesses identified items seized in the searches as property stolen from them in burglaries. The items identified by the witnesses included the property listed in the indictment and many which were not. The latter were introduced by the State to show guilty knowledge and a limiting instruction to that effect was given.

The defendants testified in their own behalf. Each denied knowing that the articles were stolen. They claimed that they were avid collectors

of old guns, silver, glassware, china, and other items. They further testified that many of the items were purchased at auctions. Defendant Mrs. Mertens claimed that she inherited some of the items from relatives. Some of the defendants claimed that the stolen goods were purchased from Jeffrey LaReno, a friend of the Mertens and the son of one of the State's witnesses. Gordon Mertens, Sr., claimed that at least some of the items had been planted in their home by the police.

A number of character witnesses testified on behalf of the defendants. Each testified as to the good reputation of the defendants for honesty and fair dealing. In rebuttal, the State presented witnesses who testified that defendants did not have a good reputation. These rebuttal witnesses, however, were not residents of Barrington Hills and were allowed to testify as to the general representation of the defendants in Lake Towers, Illinois, where they had lived some years earlier. Defendants also presented witnesses who testified that the defendants were collectors of the type of goods that were alleged to be stolen and that these kinds of goods had been in the defendants' home for a number of years.

The jury found each defendant guilty on each count. Gordon Mertens, Sr., was sentenced to three years probation; Marcella Mertens was sentenced to three years probation, with the first six months in the county jail; Robert Mertens and Gordon Mertens, Jr., were both sentenced to three to nine years in the penitentiary.

On appeal defendants assert that their guilt was not proved beyond a reasonable doubt, that evidence outside the indictment was improperly admitted, that the December 12, 1974, search warrant did not adequately particularize the items to be seized, that the searches of the defendants' home exceeded the authority of the warrants, that it was error to deny the motions to sever the counts and sever the trials of each defendant, that it was error for the trial court to deny a defense motion for a continuance, and that rebuttal testimony concerning the defendants' reputation was improperly admitted.

## Proof Beyond a Reasonable Doubt

Defendants first argue that the evidence presented—while quantitatively large—was inadequate in quality and specificity to prove the offenses charged in the indictment. This argument is essentially a challenge to the State's basic theory that given the large number of stolen items commonly possessed in defendants' household, it would be impossible for defendant family members not to be aware that he or she was in possession of stolen property.

Defendants were charged with theft by possession under section

16—1(a)(1) of the Criminal Code of 1961, which provides that a person commits theft when he obtains or exerts unauthorized control over property of the owner, and intends to deprive the owner permanently of the use or benefit of the property. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1).) The phrase "obtains or exerts control" over property includes possession of property. Thus one may be in violation of the theft statute in question when he knowingly exerts unauthorized control through mere possession of property, intending to permanently deprive the owner of its use. (*People v. Helm* (1973), 10 Ill. App. 3d 643, 295 N.E.2d 78, *People v. Nunn* (1965), 63 Ill. App. 2d 465, 212 N.E.2d 342.) Therefore the key elements that the State was required to prove at trial were possession and requisite intent on the part of all defendants.

■■■ Defendants contend that possession by all defendants of all items was not shown. However, criminal possession can either be actual or constructive. (*People v. Cogwell* (1972), 8 Ill. App. 3d 15, 288 N.E.2d 729; *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) A person is in constructive possession of contraband when such is in a place under his immediate and exclusive control. (*Cogwell; People v. Bedford* (1966), 78 Ill. App. 2d 308, 223 N.E.2d 290.) Joint possession may still be considered to be exclusive possession (*People v. Wheeler* (1955), 5 Ill. 2d 474, 126 N.E.2d 228), and where possession is joint, all in possession may be found guilty of theft (*People v. Donald* (1971), 132 Ill. App. 2d 598, 270 N.E.2d 85). Thus in *People v. Songer* (1977), 48 Ill. App. 3d 743, 362 N.E.2d 1127, the defendant was found to be in constructive possession of stolen property because he was found to be a co-tenant of the apartment in which the property was found. In the present case there was ample evidence from which the jury could properly conclude that each defendant constructively possessed stolen property. The evidence established that all defendants were part of one family, residing in one house, and with access to all parts of that house.

■■ Likewise the jury could properly conclude that the defendants knowingly possessed this property with the intent to permanently deprive its owners of its use or benefit. The requisite knowledge and intent need not be directly proved, but may be deduced or inferred by the trier of fact from the facts and circumstances of the case. (*People v. Ward* (1975), 31 Ill. App. 3d 1022, 335 N.E.2d 57, *People v. Campbell* (1975), 28 Ill. App. 3d 480, 328 N.E.2d 608, *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.) In *People v. McCormick* (1968), 92 Ill. App. 2d 6, 235 N.E.2d 832, for example, the fact that the defendant purchased the property in question under circumstances which would have aroused the suspicions of an honest man that it was stolen was sufficient to establish knowledge and intent. In the present case large quantities of stolen

property was found throughout the defendants' house. The State introduced into evidence many of these items for the express purpose of proving guilty knowledge and intent. (The propriety of the State's introduction of items outside of the indictment is discussed below.) From this evidence the jury could properly conclude that the reasonable mind could not help but be aware that the property was stolen. Thus we find that the requisite intent was proved as to all defendants.

■■ The accountability theory employed in this case is a further reason why the State did not have the burden of proving that each defendant was aware of or possessed each and every item of stolen property. When two or more defendants have a common design to do an unlawful act, any act done by any of them in furtherance of the common design is considered the act of all and all are equally responsible for the crime committed. Proof of a common design or purpose need not be based on words of agreement, but can be drawn from the circumstances surrounding the commission of the act. (*People v. Nowak* (1970), 45 Ill. 2d 158, 169, 258 N.E.2d 313, 319.) From the evidence in the present case, the jury could reasonably infer that all defendants were engaged in a common scheme to possess stolen property. Under an accountability theory, the existence of such a common design imputes knowledge and possession of all stolen property to all the defendants. See *People v. Ehn* (1974), 24 Ill. App. 3d 340, 320 N.E.2d 536.

■■■ The defendants argued that the State failed to show that they were in possession of *recently* stolen property. It is well settled that the unexplained possession of recently stolen property gives rise to an inference of theft. (See, *i.e.*, *People v. Ward* (1975), 31 Ill. App. 3d 1022, 335 N.E.2d 57.) This inference, however, concerns the initial taking of the property in question. In a case such as this, where the defendants are charged with theft by possession, as opposed to the original burglaries, there is no need for an inference, and the question of recent possession is therefore inapplicable. (*People v. Nunn* (1965), 63 Ill. App. 2d 465, 212 N.E.2d 342.) Evidence that the accused was in possession of stolen property at any time after its theft is admissible even though possession is not sufficiently recent or exclusive to give rise to the presumption that the defendants were the actual thieves. (*People v. Robbins* (1974), 21 Ill. App. 3d 317, 315 N.E.2d 198.) In the instant case evidence of the defendants' possession was a necessary element of the crime charged and was also relevant to the element of guilty knowledge and intent. Thus this evidence was properly admitted without a showing that it was recently stolen.

■■ The defendants also contend that ownership of some of the items was not properly proved. Specifically they point to the identification of

nondistinctive wine and beer, to a lack of positive identification of certain elephant tusks and a rhino foot ashtray, and to the nonspecific testimony of one theft victim that many of the items were merely like those taken from his home. Not all crime victims can be expected to have positive proof of ownership of their property, like sales slips and serial numbers. Thus the failure to identify property by way of serial number is not necessarily fatal to the State's case. (*People v. Panus* (1979), 76 Ill. 2d 263, 270, 391 N.E.2d 376, 378.) Further, some property is of such a character that it cannot be positively identified, and courts have found it sufficient where the owner testified that articles found in the possession of a defendant are identical to those stolen, without positive testimony that they are in fact the property of the person from whom they were taken. (*People v. Rogers* (1959), 16 Ill. 2d 175, 157 N.E.2d 28.) In cases where the sufficiency of the identification of stolen property is an issue, the trier of fact makes the ultimate determination of weight and credibility. (*Panus*, 76 Ill. 2d 263, 270.) Here there is no reason to challenge the jury's finding of credibility of identification. This is especially so in light of the fact that some items were positively identified by serial number and many others were identified by specific references from their owners.

The defendants' final argument with respect to proof beyond a reasonable doubt is that they offered plausible explanations for their possession of many of the items in question. A defendant who elects to explain his possession of stolen property must offer a reasonable story or be judged by its improbability. (*People v. McIntosh* (1977), 48 Ill. App. 3d 694, 363 N.E.2d 128; *Ward*.) An examination of the evidence supports a conclusion that the defendants' explanations were unworthy of belief. For example, Marcella Mertens claims to have bought a mink coat from one auction and its present lining from a different source. A theft victim testified, however, that the lining and coat went together and even pointed to where her initials had been ripped out of the lining. The defendants claimed that a painting identified by another witness had actually been painted by a Mertens daughter when she was 13. The crime victim, however, had photographs of the painting on exhibit in his home and testified that part of the painting had been altered. An art expert confirmed much of this testimony. Similarly, the defendants claimed to have bought two paintings from a restaurant because the subject resembled a family member. A witness had a photograph showing the same paintings on display in his home. The art expert confirmed the identity of the paintings displayed at trial with those in the photograph. In sum, we find that the defendants' explanations in no way support their contention that their guilt was not proved beyond a reasonable doubt.

EVIDENCE OUTSIDE THE INDICTMENT

The second issue raised by the defendants concerns the admission into evidence of stolen items which were not listed in the indictment. The defendants also contend that some of the items were never identified as being stolen and that certain testimony concerning possible burglaries was improper.

■■ As discussed above, intent and guilty knowledge are necessary elements in the proof of theft by possession. One of the defendants' defenses was to deny any knowledge that the property was stolen and thus knowledge and intent were contested issues at trial. While as a general rule evidence of other crimes is inadmissible, the State is allowed to introduce evidence to prove knowledge or intent even if this evidence is outside the indictment or is evidence of other crimes. (*People v. Brinn* (1965), 32 Ill. 2d 232, 204 N.E.2d 724, *cert. denied sub nom. Clements v. Illinois* (1965), 382 U.S. 827, 15 L. Ed. 2d 72, 86 S. Ct. 62; *People v. Collins* (1977), 48 Ill. App. 3d 643, 362 N.E.2d 1118; *People v. Collins* (1977), 51 Ill. App. 3d 993, 367 N.E.2d 504.) While the number of items introduced was unquestionably large, under the facts of this case we find that their probative value outweighed any prejudicial effect. (Cf. *People v. Funches* (1978), 59 Ill. App. 3d 71, 375 N.E.2d 135.) When the defendants denied knowledge that the items in their possession were stolen, the State properly introduced the evidence in question to support its theory that knowledge and intent could reasonably be inferred from the quantity of stolen goods in the defendants' home. The evidence in question was clearly introduced for this specific purpose and a limiting instruction was given.

We find it more difficult, however, to conclude that the references to possible burglaries were properly admitted to show knowledge or intent. Obviously evidence of the actual taking of an item would be good evidence of knowledge that it was stolen. However, such evidence was not necessary to support the State's basic knowledge theory and here the prejudicial effect begins to overtake probative value. We find, however, that the two isolated references complained of are insufficient to warrant reversal of the defendants' conviction. In one instance, a police officer merely testified that footprints from a burglary in Barrington Hills came within two to three hundred feet of the defendants' property. The other reference concerns a burglary in Michigan. This reference was brought out during cross-examination and was only clarified during redirect examination. Any prejudice from this testimony would have been initiated by the defendants themselves. See *People v. Kostos* (1961), 21 Ill. 2d 496, 173 N.E.2d 466.

There were a few items that crime victims were unable to identify at

trial. The defendants unsuccessfully moved for a mistrial on the grounds that such unidentified items may have contributed to the jury's verdict. The State has maintained that it had every intention of having these items identified, learning only at the last minute of the witnesses' inability to do so. The items in question were not offered into evidence. In light of the small number of items involved and in light of the jury instruction that jurors should only consider evidence admitted by the court, we find no prejudice to the defendants.

### SEARCH WARRANTS

Shortly after their arrests, defendants unsuccessfully moved to quash the search warrants. The first warrant in question, which was issued on December 12, 1974, called for a search of the defendants' home for "elephant tusks, handguns, rifles, and shotguns" which were evidence of burglary and theft. The complaint for this search warrant contained two affidavits. In his affidavit, Barrington Hills police officer Al Meyers stated that he had a conversation with a "John Doe" in which he was informed that this John Doe had observed stolen handguns, rifles, shotguns, and two elephant tusks in the defendants' home. Officer Meyers further stated that he had checked police records and found that a number of rifles, handguns, and shotguns, as well as two elephant tusks, had been reported stolen. A picture of the tusks in question was attached to the affidavit. The John Doe referred to in Officer Meyers' statement signed an affidavit before the issuing judge. This John Doe stated that he had been in the defendants' home on a great number of occasions and had observed numerous stolen guns and other items. He further stated that he had been told by defendant family members that the items were in fact stolen. The defendants challenge the failure to suppress the December 12 warrant on the basis that it was overly broad and thus left too much to the discretion of the officers executing it.

■■ No search warrant is to be issued unless it particularly describes the things to be seized. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6; Ill. Rev. Stat. 1973, ch. 38, par. 108—7.) This requirement is designed to make general searches impossible and prevent the seizure of one thing under a warrant describing another. (*Stanford v. Texas* (1965), 379 U.S. 476, 485, 13 L. Ed. 2d 431, 437, 85 S. Ct. 506, 511-12.) However, the particularity requirement is more flexible in cases, such as the case at bar, which do not also concern First Amendment rights. (*United States v. Scharfman* (2d Cir. 1971), 448 F. 2d 1352; *People v. Raicevich* (1978), 61 Ill. App. 3d 143, 377 N.E.2d 1266.) Thus in *Raicevich* a search warrant commanding the seizure of one particularly described firearm "and any other

handguns which may be stolen" was found to be proper. (61 Ill. App. 3d 143, 145, 377 N.E.2d 1266, 1269.) The court held:

"The handguns to be seized were not just *any* handguns but stolen handguns which defendant had previously so described. The qualifying word limits the scope of the property to be seized and curtails the discretion of the officers executing the warrant. Furthermore, the search was limited to a particular premise upon which the officers could reasonably believe a handgun theft operation was being conducted." (Emphasis in original.) (61 Ill. App. 3d 143, 146, 377 N.E.2d 1266, 1269.)

We find this language in *Raicevich* to be controlling of the warrant at issue here. A reading of the warrant as a whole makes it clear that the weapons described were stolen handguns, rifles and shotguns, and not just any weapons since the items were described as being used in the commission of or constituting evidence of burglary and theft. The affidavits make clear that the weapons were stolen and contained alleged admissions of some of the defendants to that effect. A picture of the elephant tusks was included so that there can be no question that at least one item was particularly described. The search was to be limited to the premises of the defendants' home which was alleged to contain the stolen items. Under these circumstances we find that the warrant adequately particularized the items to be seized.

Defendants challenge the sufficiency of the subsequent warrants solely on the ground that they were based on items seen during the execution of the first warrant. Thus, having found that this first warrant was proper on its face, we find the subsequent warrants to also be valid.

### Scope of the Search

Defendants also contend that even if the warrants were valid, the extent of the search and seizure far exceeded that authorized by the warrants. They also argue that the trial court erred in refusing to hold an evidentiary hearing on this issue. The State contends that this scope issue has been waived or in the alternative that the large number of items seized can be legally justified. We find that in the absence of an evidentiary hearing on the extent of the search, we are without a suitable record to determine the merits of this issue. The question remains, however, as to whether it was error to refuse to hold the requested evidentiary hearing.

■■ Defendants' hearing January 23, 1976, on their original motion to quash was directed solely to the search warrants themselves. In denying the motion, the court specifically noted that it did not reach the question

of whether the searches themselves exceeded the authority of the warrants. On April 11, 1977, the morning set for trial, the defendants made a second motion to suppress. The State moved to strike certain specified portions of this motion on the grounds that the issues of probable cause and the particularity of the descriptions in the warrants had already been decided adversely to the defendants. The State's motion was allowed. We find that the motion to strike was properly granted under the general rule that once a motion to suppress has been ruled upon by one judge, that motion can not be relitigated before another judge absent showing of exceptional circumstances or of any new evidence to be presented. *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.

The issue of the scope of the search was one of the points raised in the second motion to suppress, and this issue was not listed in the State's motion to strike. The defendants' second motion alleged, in part:

"3. In executing the said warrant, the executing officers and others, * * * searched the entire premises and grounds and all items contained therein, rather than looking for the items described in the warrant, i.e. elephant tusks, handguns, rifles and shotguns, if such can be called a description."

This allegation concerning the scope of the search was never formally stricken by the court below. However, the court's action of eventually denying defendants' second motion without an evidentiary hearing implicitly ruled that the scope issue, too, had been previously litigated.

It is unclear whether or not the general rule against relitigating motions to suppress was meant to apply to situations like the one here where evidence may have been available but was purposely not presented to the court. In *People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283, the Illinois Supreme Court first articulated the rule in question. The facts in *Hopkins* concern the denial of two separate motions to suppress—one concerned with physical evidence and one with an identification—each of which the defendant sought to have relitigated. The reviewing court found that the second motion to suppress physical evidence was based on previously presented testimony and therefore was properly denied without a hearing. However, the second motion to suppress the identification involved a different witness from the first identification motion and thus a second hearing was called for.

The case of *People v. Colletti* (1978), 61 Ill. App. 3d 289, 377 N.E.2d 1276, presents a situation analogous to the one in this case. In *Colletti* the defendant twice moved to dismiss his theft charge on the grounds of the running of the statute of limitations. The defendant presented "additional evidence" at the second hearing as this was the only hearing at which he

testified on his own behalf. The appellate court prefaced its discussion with a thorough summary of the case law on this issue:

"It is well established in Illinois that a defendant may not repeatedly relitigate a pretrial motion to suppress. (Citations.) The issue may only be relitigated if there is additional evidence or peculiar circumstances warranting the reconsideration (*People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14, *People v. Durruty* (1974), 18 Ill. App. 3d 335, 309 N.E.2d 802, *People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244, *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239, *appeal denied* (1970), 43 Ill. 2d 398), or a reason for not presenting relevant evidence at the prior hearing must be asserted. (*People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448, *appeal denied* (1976), 64 Ill. 2d 596.) The mere fact the defense has discovered a new argument is insufficient. *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448, *appeal denied* (1976), 64 Ill. 2d 596." (61 Ill. App. 3d 289, 291-92, 377 N.E.2d 1276, 1278-79.)

It then concluded that while the defendant's testimony had been available at the first hearing to suppress (see *People v. Henderson*), his testimony could still be considered additional evidence warranting reconsideration of the issue.

■■ We find that under the facts of this case it was error to deny the defendants an evidentiary hearing on the scope of the search. While the second motion was made on the morning of the trial, there was no finding below that it was untimely. (*Cf. People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487.) The order denying the first motion to suppress was specifically limited to findings that the warrants themselves were proper. No evidence as to that part of the motion relating to the scope of the search was presented. Thus the defendants were seeking in their second motion to suppress, for the first time, to have an evidentiary hearing on the execution of the warrants. Given the extraordinary number of items seized from defendants' home, a determination of the validity of the scope of the search is essential. We find that under these facts sufficiently exceptional circumstances have been demonstrated to require a hearing on the scope issue in the second motion to suppress.

SEVERANCE, CONTINUANCES, AND REPUTATION EVIDENCE

The remaining issues raised by the defendants warrant only limited discussion. The defendants contend that they were prejudiced by the denial of their various motions to sever the counts of the indictment and to sever their trials. Generally, those indicted jointly for the commission of an offense are to be tried together. The primary question is whether the

defenses of the several defendants are so antagonistic that a severance is needed for a fair trial. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326.) Here, all defendants maintained the same defense and thus a motion for a severance of the defendants was properly denied.

With respect to the separate counts of the indictment, the joinder rule was designed to protect an accused against being forced to trial on several unrelated charges by reason of the prejudicial effect of such multiple unrelated accusations. (*People v. Key* (1975), 28 Ill. App. 3d 637, 328 N.E.2d 914.) In the instant case we find that the charges are sufficiently interrelated to justify a denial of a severance.

Defendants also claim prejudice from a denial of their motions for continuances. Coupled with this claim is an allegation that the State delayed in furnishing discovery. This delay allegedly made it impossible for the defendants to adequately prepare for trial without a continuance. The offense in question occurred in December 1974. Defense counsel was retained almost immediately. The defendants filed discovery motions in June of 1976. These motions were answered in November of 1976. Supplemental discovery answers were subsequently filed. This matter was originally set for trial on February 21, 1977. The trial was continued both by the State and by the defendants to April 11, 1977. Jury selection did not begin until April 18, 1977, with the trial beginning April 21, 1977. All motions for continuances are addressed to the discretion of the trial court and are to be considered in light of the diligence shown by the movant. (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e).) The trial court denied the defendants' further request for continuances after hearing prolonged arguments. Our review of the record reveals no abuse of discretion.

■■ Finally, defendants contend that the State's rebuttal testimony concerning the defendants' reputation was improper. The general rule is that an accused is entitled to introduce evidence of his good character, and if he does, the prosecution may introduce character evidence in rebuttal. All such character evidence should be based on general reputation in a community and not present opinions or particular acts of misconduct. (*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 309 N.E.2d 659.) We find that any testimony concerning specific incidents was first elicited on cross-examination by defense counsel, and thus defendants cannot now claim prejudice. The defendants also contend prejudice based on the fact that the rebuttal witnesses were not residents of the defendants' present community. Evidence of character must be confined to proof of general reputation at or before the commission of the offense. (*Carruthers.*) We find that the evidence in question was not so remote as to time and geography to be inherently prejudicial and that any problem of remoteness is a question of the weight given to this evidence and not its admissibility.

In sum, we find that the defendants' guilt was proved beyond a reasonable doubt, that the evidence of stolen items outside the indictment was properly admitted to show knowledge and intent, that the search warrants in question were valid, that the motions for severance and for continuances were properly denied, and that there was no error in admitting rebuttal evidence concerning the defendants' reputation. However, we hold that the trial court improperly refused to hold an evidentiary hearing on the scope of the search issue presented by the defendants' second motion to suppress.

Accordingly, this cause is remanded to the Circuit Court of McHenry County with directions to conduct a full hearing on the scope of the searches and seizures. If it is found that the evidence was properly seized, a new judgment of conviction should be entered. If found that improper evidence was introduced at trial, so as to have prejudiced the defendants, the judgment must be vacated and the defendants granted a new trial. See *People v. Thigpen* (1966), 33 Ill. 2d 595, 213 N.E.2d 534.

Remanded with directions.

SEIDENFELD and RECHENMACHER, JJ., concur.