THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MILTON SHEPARD, Defendant-Appellant.

First District (1st Division)   No. 1—97—0053

Opinion filed May 18, 1998.

714

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Karan M. Giliberto, and William Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, Milton Shepard, was convicted of first-degree murder and sentenced to 50 years in prison. On appeal, defendant argues: (1) the State failed to prove him guilty beyond a reasonable doubt; and (2) the trial court erred by refusing to grant a rehearing on his motion to suppress. We affirm.

At trial, the State called Tamra Davis, who testified that at approximately 11:44 a.m. on September 29, 1994, she was walking to a store at St. Charles Road and 19th Street. As she approached the intersection, she heard two gunshots. Davis looked up and saw a

man in a red jacket running east on St. Charles Road. He cut through an alley going north, then cut through another alley headed east. Davis lost sight of him after that.

Later that day, Davis went to the police station, where she picked defendant out of a photo array and a lineup. On cross-examination, Davis testified she had prior convictions for retail theft, prostitution, and possession of a controlled substance. She also had pending a case for delivery of a controlled substance.

Calvin Buchanan testified that at approximately 11:44 a.m. on September 29, 1994, he was standing on St. Charles Road between 19th and 20th Streets, talking with Edwin Winters. After the conversation ended, Buchanan started to walk to a store on the corner, while Edwin started to walk across St. Charles Road.

When Buchanan got to the store, he heard a gunshot. Buchanan looked around and did not see anyone. Then he heard two more gunshots. Buchanan ran to where everyone was gathered, at 1909 St. Charles. As he approached the crowd, Buchanan noticed that the body on the ground was Edwin Winters.

Buchanan saw defendant run away from the crowd in a red and blue jacket. Defendant ran north on 19th Street, then turned in the first alley off St. Charles, heading east.

Buchanan viewed a photo array at the police station, but he did not identify defendant at that time because he was scared that what happened to Edwin might also happen to him. Buchanan first identified defendant a few days before trial, when he told an assistant State's Attorney that defendant was the person running from the crowd after the murder.

Dorothy Barner testified that at approximately 11:44 a.m. on September 29, 1994, she was stopped at a red light by St. Charles Road and 19th Street. Barner heard a "bang, bang" and saw people running. She looked out the driver's side window and saw a boy in a red jacket standing over another boy, who was lying on the curb. The boy in the red jacket stuck his arm out and Barner again heard a "bang, bang." Then the boy in the red jacket started running east, in her direction, so she "pulled off."

Barner viewed several photographs at the police station and stated that defendant looked like the shooter, but she could not be 100% sure. Barner made an in-court identification of defendant, stating she was "more sure now" that defendant was the shooter.

Beth Richardson testified that at approximately 11:44 a.m. on September 29, 1994, she was driving west on St. Charles Road. As she approached the intersection at 19th Street, she heard a "pop, pop, pop" and saw a young man in a red, white, and black jacket run east on St. Charles Road.

Richardson viewed a lineup at the police station, and she told the police that she was unable to make an identification. One of the officers then told her to "pick one," and she picked defendant out of the lineup.

Doctor Larry Sims performed the autopsy of Edwin Winters. Winters was shot once in the right side of the head and once in the left buttock. Doctor Sims opined that Winters died from the multiple gunshot wounds.

The State's last witness was David Glover, a teacher at Proviso East High School. Defendant was a student in Glover's fourth period class, which started at 11 a.m. and ended at 12:24 p.m. On September 29, 1994, defendant was absent from class.

Defendant's first witness was Regina Jennings, who testified that on September 29, 1994, she was working in the probation department for the Cook County juvenile court at the Maybrook courthouse. Defendant came in and asked for a note indicating that he had been to court that morning. Defendant needed the note in order to explain his absence from school. Jennings could not recall the exact time she saw defendant and gave him the note, but she knew it was sometime between 10 a.m. and 2 p.m.

Carolyn McCaskill, a Maywood detective on September 29, 1994, testified she interviewed Jennings the week of the murder. Jennings told her that defendant came into her office between 10:30 and 11 a.m. to get his note.

Kim Shepard, defendant's mother, testified she drove defendant to court on the morning of September 29, 1994. They left the courthouse between 11 and 11:30 a.m. and drove to Proviso East High School, located on First Avenue and Madison, about one mile from the courthouse. The drive took approximately 7 to 10 minutes. After defendant exited Shepard's car, he walked inside the school building. Shepard then drove away.

Mary Lu Latocha, a counselor at Proviso East High School, testified she saw defendant on September 29, 1994, when he came to her office to pick up an "authorized absence form." Defendant needed that form to authorize his absence from class periods one through four due to his court appearance. The form was time-stamped at 12:10 p.m. Latocha testified that due to the paperwork involved, defendant must have come into her office approximately 5 to 10 minutes earlier, in order for the form to be stamped at 12:10 p.m.

Officer Valerie Butler testified she drove from St. Charles Road and 19th Street to Proviso East High School, in order to measure the distance between the two locations. Taking the shortest route known to her, she measured the distance as 1.7 miles. Butler also testified

she walked from St. Charles Road and 19th Street to the high school in about 15 minutes.

The jury convicted defendant of first-degree murder, and the trial court sentenced him to 50 years in prison. Defendant appeals.

■ First, defendant argues the State failed to prove him guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

■ Defendant contends there was not enough time for him to leave court, commit the murder, and return to school. We disagree. Defendant's mother testified she drove defendant to court on the morning of September 29, 1994, and that they left the courthouse between 11 and 11:30 a.m. and drove to the high school. The drive took 7 to 10 minutes. Thus, defendant could have been at the school as early as 11:10. The murder occurred about 35 minutes later (11:45 a.m.) at St. Charles Road and 19th Street, which was 1.7 miles from the school. A rational trier of fact could find that 35 minutes was more than sufficient time for defendant to run the 1.7 miles to the crime scene and shoot the victim.

Mary Lu Latocha, the school counselor, testified that defendant was in her office by 12:05 p.m. at the latest, which means defendant had 20 minutes to return to school after killing the victim at 11:45. A rational trier of fact could find that 20 minutes was sufficient time for defendant to run the 1.7 miles back to the school.

■ Defendant next questions the credibility of Tamra Davis, Dorothy Barner, and Calvin Buchanan, all of whom identified defendant. Defendant contends their testimony was unbelievable because: Tamra Davis had convictions for prostitution, retail theft and possession of a controlled substance; Dorothy Barner's "identification, unsure and tentative on the date of the shooting, grew into certainty after the passage of two years"; and Calvin Buchanan failed to identify defendant until a few days before trial.

The jury assesses witnesses' credibility (*People v. Trotter*, 293 Ill. App. 3d 617, 619 (1997)), and it obviously resolved any credibility questions here in favor of the State. Viewing the testimony of Tamra Davis, Dorothy Barner, and Calvin Buchanan in the light most favorable to the State (*Collins*, 106 Ill. 2d at 261), any rational trier of fact could have found defendant guilty beyond a reasonable doubt.

Next, defendant argues the trial court erred by refusing to grant a rehearing on his motion to suppress identification. Defendant

requested the rehearing following the trial testimony of Beth Richardson. Richardson testified that, after telling the police she could not identify anyone at defendant's lineup, an officer nevertheless told her to "pick one." Defendant contends the officer's conduct impermissibly suggested that Richardson pick defendant out of the lineup.

■ Collateral estoppel generally bars a rehearing on a motion to suppress in the same proceeding. *People v. Gilliam*, 172 Ill. 2d 484, 505 (1996). However, the trial court may grant a rehearing when defendant shows "exceptional circumstances" or newly discovered evidence. *Gilliam*, 172 Ill. 2d at 506. Newly discovered evidence is evidence that could not have reasonably been discovered at the time of or prior to the hearing on the motion to suppress. See generally *Gilliam*, 172 Ill. 2d at 506.

Defendant contends Richardson's trial testimony was newly discovered evidence. In support, defendant cites *People v. Mertens*, 77 Ill. App. 3d 791 (1979). In *Mertens*, defendants filed a pretrial motion to quash search warrants. *Mertens*, 77 Ill. App. 3d at 800. The court denied the motion, noting that it did not specifically reach the issue of whether the searches exceeded the authority of the warrants. *Mertens*, 77 Ill. App. 3d at 800-01. On the morning of trial, defendants filed a second motion to suppress, challenging the scope of the search. The court denied the motion without an evidentiary hearing. *Mertens*, 77 Ill. App. 3d at 801.

The appellate court reversed, holding that defendants were entitled to an evidentiary hearing since evidence relating to the scope of the search had not been presented during the hearing on the first motion. *Mertens*, 77 Ill. App. 3d at 802. In support of its holding, the court cited *People v. Colletti*, 61 Ill. App. 3d 289 (1978).

In *Colletti*, defendant filed a motion to dismiss a charge on the grounds that it was barred by the statute of limitations. *Colletti*, 61 Ill. App. 3d at 289. The court held a hearing during which the defendant submitted an affidavit but otherwise did not testify. *Colletti*, 61 Ill. App. 3d at 290. The trial judge denied the motion, and the defendant later renewed the motion before a second judge. At this hearing, the defendant testified and the court granted his motion to dismiss the indictment. *Colletti*, 61 Ill. App. 3d at 291. On appeal, the State argued that the first hearing barred the defendant from relitigating the motion to dismiss. *Colletti*, 61 Ill. App. 3d at 291. The appellate court disagreed, holding that defendant's testimony was "additional evidence" warranting the second judge to rehear the motion to dismiss. *Colletti*, 61 Ill. App. 3d at 292.

However, in *People v. Johnson*, 100 Ill. App. 3d 707 (1981), we explicitly disagreed with *Colletti*'s holding. In *Johnson*, defendants

were charged with possession of a controlled substance. *Johnson*, 100 Ill. App. 3d at 707. Defendants moved to quash their arrest and suppress evidence. *Johnson*, 100 Ill. App. 3d at 707. The trial court held an evidentiary hearing and denied their motion. *Johnson*, 100 Ill. App. 3d at 707. After the case was transferred to a second judge, defendants renewed their motion to suppress on the grounds that newly discovered evidence had come to light. This new evidence was the testimony of defendant Johnson. *Johnson*, 100 Ill. App. 3d at 708. The court held a second hearing, heard Johnson's testimony, and granted the motion to suppress. *Johnson*, 100 Ill. App. 3d at 708.

On appeal, we reversed because defendant's testimony was not newly discovered. We noted that defendant had been available at the first hearing and could have testified then. *Johnson*, 100 Ill. App. 3d at 709.

We recognized our holding conflicted with *Colletti*, but we "respectfully disagree[d] with *Colletti*'s holding" that rehearing on a motion is required in all cases when the defendant offers testimony in addition to the evidence presented at the first hearing. *Johnson*, 100 Ill. App. 3d at 709. We held instead that the evidence warranting the rehearing on a motion must be additional *and* newly discovered. *Johnson*, 100 Ill. App. 3d at 709.

*Johnson* was cited with approval in *People v. Gilliam*, 172 Ill. 2d 484 (1996). In *Gilliam*, defendant was convicted of first degree murder, aggravated kidnapping, and robbery. *Gilliam*, 172 Ill. 2d at 492. Defendant moved to suppress his confession because it was involuntary. *Gilliam*, 172 Ill. 2d at 500. The court denied the motion to suppress. *Gilliam*, 172 Ill. 2d at 505. Defendant later moved to reopen his motion to suppress and to order a psychiatric examination to determine whether he was especially vulnerable to psychological coercion. *Gilliam*, 172 Ill. 2d at 505. The trial court denied defendant's motion. *Gilliam*, 172 Ill. 2d at 505.

On appeal, defendant argued his proffered evidence and request for a psychiatric examination were additional evidence not submitted during the first hearing. *Gilliam*, 172 Ill. 2d at 506. Defendant argued that the trial court should have granted a rehearing on his motion to suppress based on the additional evidence, even though said evidence was not newly discovered. *Gilliam*, 172 Ill. 2d at 506. Our supreme court disagreed with defendant's argument. Citing *Johnson*, the supreme court held that newly discovered evidence is needed in order for the trial court to rehear a motion to suppress in the same proceeding. *Gilliam*, 172 Ill. 2d at 506. The supreme court then affirmed the trial court, holding that "none of defendant's proffered evidence was newly discovered since the suppression hearing. Similarly, defendant

could have requested a psychiatric examination when he filed his original suppression motion." *Gilliam*, 172 Ill. 2d at 506.

■ In the present case, Beth Richardson's testimony was additional evidence not presented in the hearing on the motion to suppress. However, Richardson's testimony was not newly discovered evidence, as she was revealed as a possible witness in the State's answer to discovery filed before the hearing on the motion to suppress, and defense counsel could have examined her during the hearing. Accordingly, the trial court did not err in refusing to grant defendant a rehearing on his motion to suppress.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we grant the State's request and assess defendant $150 as costs for this appeal.

Affirmed.

BUCKLEY, P.J., and GALLAGHER, J., concur.