**People of the State of Illinois, Plaintiff-Appellee, v. William Bradley, Defendant-Appellant.**

**Gen. No. 49,847.**

First District, First Division.

May 9, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Norman W. Fishman, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James Klein and Robert J. Wojcik, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Defendant was convicted of burglary and in a bench trial was sentenced to a term of not less than four nor more than eight years in the Illinois State Penitentiary. In this appeal, he contends: 1) that the evidence was not sufficient to prove him guilty beyond a reasonable doubt; 2) that the comments made by the trial court in announcing his finding of guilty indicated that the court had applied an improper standard in passing upon the defendant's guilt or innocence; and 3) that the indictment, which by reason of a typographical error misstated the year of the offense, and which was amended during the trial, failed to meet statutory requirements.

On February 4, 1964, Mildred Johnson's third floor apartment in Chicago was burglarized, and a television set was taken. The following morning her sister, Beatrice Johnson, who also lived in the apartment, and who did not testify at the trial, called the police to report the burglary, and then inquired of neighbors whether they had seen anyone with a television set. Herman Patterson, who lived on the first floor, and who did not at that time know either the Johnsons or the defendant, told Beatrice Johnson (and later testified) that at 2:30 p. m. the previous day, he had seen two men go up the back steps of the building and come down the front steps minutes later carrying a television set. Patterson described the two men to Beatrice Johnson, who noted that the description of one of the men fit that of the defendant. Mildred Johnson testified that the defendant had previously been in her home four or five times as the

guest of her son and nephew; that on one occasion he had tried to fix her back door which was broken and would not lock properly; and that in the past the defendant had admired the television set and had commented that it had a nice picture. Beatrice Johnson called the police on February 6th to report the conversation with Mr. Patterson, and to give them the defendant's name and description. The same day, the police obtained two photographs, at least one of which was of the defendant, and presented them to Mr. Patterson, who identified the defendant as one of the men he had seen two days earlier. On February 8th, the defendant, when he heard he was wanted by the police, telephoned the Johnsons, and then came over to their apartment with his wife and mother to discuss the matter. Mildred Johnson had meanwhile alerted the police, who arrested the defendant at the Johnsons' home. Later that day, Mr. Patterson went to the police station and identified the defendant as one of the men he had seen; and he did so again at the trial. The television set was never recovered.

The defendant testified that he had been to the Johnsons' apartment many times, and had always used the back stairway and entrance. He stated that he had been in the Johnsons' apartment on the afternoon of the burglary, arriving alone about 2:00 p. m. In the apartment he met Mildred Johnson's son, her nephew, and another man, and after having a few drinks the four men left the apartment together via the back stairway. Defendant testified that they left the Johnson apartment at 2:15 or 2:20 p. m., but that it could have been 2:30 p. m., and that he and two of the other men (none of whom testified) then proceeded to the home of the defendant's mother; that they stopped along the way to talk to a neighbor, Miss Era Gibson, and that he arrived at his mother's home at about 3:00 p. m. Defendant's mother testified that her son arrived at her home

at about 2:40 or 2:45, and that about 3:10 or 3:15 she sent him to the home of Miss Gibson to pick up a package. Era Gibson testified that the defendant picked up a package at her home at about 3:15, and that she did not see the defendant at any other time that day.

■ Defendant concedes that the testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. People v. Solomon, 24 Ill2d 586, 182 NE2d 736. But to sustain his argument that he was not proved guilty beyond a reasonable doubt, defendant urges that the identification of him by Herman Patterson, which forms the basis for his conviction, is not "positive" within the requirements of the law. He directs our attention to the fact that there was no "line-up" used in this case for the identification of the defendant; and that the police exhibited only two photographs to Mr. Patterson, both of which might have been of the defendant.

In People v. Washington, 26 Ill2d 207, 186 NE2d 259, our Supreme Court held:

> The remaining contention that defendant was neither "properly" nor "sufficiently" identified is also without merit. In the first regard, the fact that an accused is not placed among a group of persons in being presented to a witness for identification does not fatally weaken the evidence of identification, but bears only upon the weight to be accorded that evidence. [Citing cases.] As to the latter premise, positive identification by one witness who had ample and favorable opportunity to observe is sufficient to convict even though the testimony is contradicted by the accused. [Citing cases.] (26 Ill2d at 209, 210.)

■ The record shows that Mr. Patterson had ample opportunity, during the daytime, to observe the de-

fendant's face and profile on two different occasions only minutes apart, and after describing him to the complainant's sister he was shown a photograph of a man whom he identified as one of the men who carried the television set out of the complainant's apartment. We conclude that this formed the basis for a positive identification by Mr. Patterson, which the trial court chose to believe despite the fact that it was contradicted by the testimony of the defendant. Where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge; and unless it can be said the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable. People v. West, 15 Ill2d 171, 176, 154 NE2d 286. Under the circumstances of this record, we find no basis for substituting our judgment for that of the trial judge, and conclude that the defendant was proved guilty beyond a reasonable doubt.

■■ Defendant's second contention is that the trial judge applied an improper standard in passing upon his guilt or innocence. Our attention is directed to the following portion of the comments made by the trial judge in announcing his finding of guilty:

> The Court doesn't conjecture his guilt by reason of that but having elected to make an explanation to the court to protest his innocence he should come forward with enough evidence to create a reasonable doubt in the mind of the Court.

Defendant claims these comments indicate that the burden of proof had shifted from the State to the defendant, in violation of the well-established rule that through-

out the trial the burden of proving the guilt of the defendant beyond a reasonable doubt is on the State, and the law does not require the defendant to prove his innocence. There is no question that the defendant correctly states the Illinois law as to the burden of proof in criminal cases. People v. Long, 407 Ill 210, 95 NE2d 461; People v. Caylor, 386 Ill 501, 54 NE2d 514. But we cannot accept his contention that the comments of the trial judge indicated that a different rule had been applied. When the statement of the court, as described above, is read in the context of all his comments, it is clear that the court was explaining his reasons for resolving the conflicting testimony against the defendant. He first pointed out that he was impressed by the testimony of Mr. Patterson and of Mildred Johnson, and discussed special factors which contributed to the credibility of their testimony. He then discussed the defendant's testimony, and pointed out his reasons for questioning that testimony. The comments to which the defendant takes exception then followed. We conclude that these comments merely indicate that the defendant's testimony was not sufficiently credible to the trial judge to overcome the testimony to the contrary adduced on behalf of the State. The judge therefore did not apply an erroneous standard in passing upon the guilt or innocence of the defendant.

■ The final contention made by the defendant is that the indictment was fatally defective because it alleged that the offense was committed on February 4, 1963, whereas the State's case related to an offense committed on February 4, 1964. This discrepancy was first noticed by the trial judge during the course of the trial, and he called it to the attention of the respective attorneys. The State was then permitted, on motion, and over the objection of the defendant, to amend the indictment, on the authority of § 111-5 of the Code of Crim-

inal Procedure (Ill Rev Stats, c 38, § 111–5 (1963)). The relevant portion of that statutory provision permits the amendment of an indictment upon motion, ". . . at any time because of formal defects, including: (a) Any miswriting, misspelling or grammatical error; . . ." (Ill Rev Stats, c 38, § 111–5(a) (1963)).

The record indicates that questions put to the witnesses by both attorneys referred to the correct year, and defendant has not argued, either here or in the trial court, that the error in the indictment prejudiced him in any way in the preparation of his defense.

The amendment of purely formal defects in an indictment without the return of that indictment to the grand jury is consistent with the general purposes of the Code of Criminal Procedure, as stated in § 101–1 of that Code (Ill Rev Stats, c 38, § 101–1 (1963)). Subsection 101–1(b) sets forth one such purpose as to; "Ensure fairness of administration including the elimination of unjustifiable delay; . . ."

The trial judge concluded, and we agree, that the typographical error in writing the date of the offense, which did not in any way prejudice the defendant in the preparation of his defense, could properly be amended on motion under § 111–5 (Ill Rev Stats, c 38, § 111–5 (1963)).

The judgment of the trial court must therefore be affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.