# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Cameron*, 2012 IL App (3d) 110020

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDGAR CAMERON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0020 |
| Filed | October 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not shift the burden of proof to defendant or fail to prove him guilty in convicting him of theft and unlawful possession of firearm ammunition by a felon, but the restitution order was remanded for a determination of the proper amount of restitution, the sentencing order was modified to make the sentences concurrent in the absence of evidence that consecutive sentences were necessary to protect the public, and monetary credits against defendant's fines were warranted based on his presentence custody |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 10-CF-222; the Hon. James B. Stewart, Judge, presiding. |
| Judgment | Affirmed in part, modified in part, and vacated in part; cause remanded. |

Counsel on
Appeal

Jessica D. Fortier (argued), of State Appellate Defender's Office, of Chicago, for appellant.

John T. Pepmeyer, State's Attorney, of Galesburg, (Terry A. Mertel and Justin A. Nicolosi (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.

Justices Lytton and Wright concurred in the judgment and opinion.

## OPINION

¶ 1    After a bench trial, defendant, Edgar Cameron, was convicted of unlawful possession of firearm ammunition by a felon (720 ILCS 5/24-1.1(a) (West 2010)) and theft (720 ILCS 5/16-1(a)(4)(A) (West 2010)).[1] He was sentenced to consecutive terms of imprisonment and ordered to pay restitution and various fines, fees, and costs. Defendant appeals, arguing that: (1) the trial court improperly shifted the burden of proof to him at the bench trial in violation of his due process rights; (2) he was not proven guilty beyond a reasonable doubt of theft; (3) the trial court erred in the amount of restitution it ordered; (4) the trial court erred in imposing consecutive sentences upon him; and (5) he is entitled to a certain monetary credit against his fines for the time he spent in pre-sentence custody and to a recalculation of his Violent Crime Victims Assistance Fund assessment. We agree with defendant's third, fourth, and fifth arguments. Therefore, we affirm defendant's convictions, modify defendant's sentences to concurrent terms of imprisonment, vacate the trial court's restitution order, and remand this case for a restitution hearing, if necessary, and for further proceedings consistent with this opinion.

¶ 2                              FACTS

¶ 3    In June 2010, defendant was charged with unlawful possession of firearm ammunition by a felon (count I), theft of Amanda Trejo's vehicle (count II), and theft of Letha McKee's driver's license (count III). The amended charging instrument alleged that the offenses were

---

[1]The charging instrument and the sentencing order list the statutory citation for the theft charge as section 16-1(a)(1)(A) of the Criminal Code of 1961 (Code) (720 ILCS 5/16-1(a)(1)(A) (West 2010)). However, the language used in the charge itself was from section 16-1(a)(4)(A) of the Code (720 ILCS 5/16-1(a)(4)(A) (West 2010)).

committed on May 20 (count III) and May 30, 2010 (counts I and II).[2] Defendant's case proceeded to a bench trial in September 2010. The evidence presented at trial can be summarized as follows.

¶ 4 　　Letha McKee testified for the State that on May 20 at about 7 p.m., she went to the Farm King store in Galesburg. Upon arrival, McKee parked in the parking lot next to an unoccupied white Chevrolet with chipped paint and went into the store, leaving her purse in her unlocked car.[3] When McKee returned, her purse was missing and the white car was gone. The purse contained McKee's wallet, driver's license, checkbook, and social security cards, and slightly more than $100 in cash. McKee did not see anyone go into her car while she was in the store and did not give anyone permission to do so or to take her purse out of her car.

¶ 5 　　Galesburg police officer Aaron Ritter testified that he reported to the Farm King store in response to the theft. Upon arrival, Ritter spoke to McKee. McKee gave Ritter a description of the white car that was parked next to hers (the suspect vehicle), and store employees gave Ritter a description of a potential suspect as a heavier-set African-American male. Ritter did not find anyone matching that description at the scene and was unable to locate the suspect vehicle at that time. At some point later, Ritter learned that McKee's driver's license had been recovered from defendant's vehicle by Officer Ingles. Ritter obtained the driver's license and went to the jail to speak with defendant. Defendant denied any involvement in the theft of the purse from McKee's vehicle.

¶ 6 　　Amanda Trejo testified that she met defendant in early May 2010. On May 29, Trejo and defendant spent the night at a hotel in Galesburg. Before going to the hotel, defendant and Trejo dropped off defendant's car, a white Chevrolet with some paint missing, at the Turnberry apartments. With Trejo's permission, defendant drove them to the hotel in Trejo's car, a black 1996 Ford Taurus. Upon arrival, defendant returned the keys to Trejo. Trejo did not tell defendant that he could no longer drive her car. When Trejo went to bed that night, she put the keys and her cell phone in her bra, but when she woke up the next morning, her keys, her vehicle, and defendant were all missing. Trejo informed the front-desk personnel, and they called the police. Trejo testified that she did not give defendant permission to take her car that morning. Trejo also testified that on May 29, she and defendant were at a bar, and defendant told her not to touch him around the waist because he did not want his gun to fall out.

¶ 7 　　Galesburg police officer Darrin Worsfold testified that on May 30, he located Trejo's car at the Turnberry apartments after he was advised by Officer Ingles that the car might be at that location. The keys were not in the car, and the car was unoccupied with no one around it.

¶ 8 　　Galesburg police officer Michael Ingles testified that on May 30 he responded to the

---

[2]Unless otherwise indicated, all dates referenced from this point forward are for the year 2010. The year has been omitted in most instances, except where necessary to avoid confusion.

[3]The trial testimony varied as to whether the white vehicle in question was a Chevrolet Impala or a Chevrolet Lumina.

-3-

hotel in question regarding the vehicle-theft complaint. Upon arrival, Ingles spoke to Trejo. Trejo gave Ingles a description of the missing vehicle, the suspect, and the suspect's vehicle. While Ingles was at the hotel, he saw the suspect vehicle go by. Ingles got into his squad car, caught up to the suspect vehicle, and made a traffic stop. Defendant was the driver of the suspect vehicle, a white Chevrolet with chipped paint, and was also the registered owner. As Ingles approached defendant's vehicle, defendant made an unprompted statement that, "[h]e did not steal that girl's car." Ingles asked defendant if he had the keys to the missing vehicle, and defendant turned the keys over to Ingles. Defendant stated that he told Trejo at the hotel that he was leaving with the vehicle and that he would be back.

¶ 9    During the course of the traffic stop, Ingles learned from dispatch that defendant was on mandatory supervised release. Ingles asked defendant if he could search the vehicle, and defendant consented. In the center console of defendant's vehicle, Ingles found the driver's license of Letha McKee. Defendant told Ingles that he did not know where the driver's license had come from. In the trunk of the vehicle, Ingles found two duffel bags. In one of the bags, Ingles found a pill bottle with .22-caliber bullets in it. In that same bag, Ingles also found two court documents with defendant's name on them. Defendant told Ingles that the bags belonged to his cousin. Defendant did not provide the name of his cousin and did not have an explanation for why his court documents were in the bag. Defendant was arrested at that time. Ingles notified Officer Ritter that he found McKee's driver's license in defendant's vehicle and later turned the license over to Ritter.

¶ 10    In addition to the witness testimony, the State also admitted into evidence McKee's driver's license, which was found in the center console of defendant's car; the bullets, which were found in a bag in defendant's trunk; defendant's court paperwork, which was allegedly found in the same bag as the bullets; and a certified conviction for one of defendant's prior felony convictions.

¶ 11    After the State rested its case-in-chief, the defendant testified in his own behalf. Defendant stated that he drove a white Chevrolet, which had chipped paint. Defendant had been to Farm King a few times but denied that he, or anyone he was with, took a purse out of a car at Farm King. Defendant did not know McKee or how her driver's license got into his center console, and stated that he never saw the license or McKee's purse in his car and that he was not the only person who drove his car. According to defendant, his sister and his two friends, "Bone" and "Kenny Mac," also drove the car. Defendant did not know the real names of his two friends and did not know where they lived.

¶ 12    Defendant stated that on May 29, he dropped his car off at the Turnberry apartments and drove Trejo's car to the hotel. Trejo was with him at the time. When defendant and Trejo got to the hotel, defendant put the keys in his pocket. Trejo never asked for her keys to be returned and never told defendant that he could not drive her car anymore. Defendant and Trejo were both drinking that night. According to defendant, he had permission from Trejo to drive her car. Defendant stated that he woke Trejo up before he left the hotel and told her that he was going to use the car to go to his mother's house to get his phone charger. Trejo seemed to understand and said, "ok." A friend of defendant called him that morning and told him that she had heard his name over the police scanner and that the police were looking for him in relation to a stolen car. On the way back to the hotel, defendant was pulled over.

Because defendant already knew that the police were looking for him in relation to a stolen vehicle, the first thing he stated to the officer was that he did not steal that girl's car.

¶ 13     Defendant denied that he consented to a search of his vehicle. The bags in his trunk of the vehicle belonged to his cousin, who was visiting from Chicago, and defendant did not know that one of the bags had bullets in it. Defendant denied that his court documents were found in the bag and stated that the officer probably found them in the glove compartment and lied about where he had found them.

¶ 14     After defendant's testimony, the defense rested. The State recalled Officer Ingles to testify in rebuttal. Ingles testified that just prior to the traffic stop, he was standing in uniform by his squad car in front of the hotel. Ingles saw defendant's car go past and travel east away from the hotel when Ingles pursued defendant and made a traffic stop.

¶ 15     At the conclusion of the evidence, the trial court heard the closing arguments of the attorneys. The State argued that the case came down to a question of credibility and that the defense's theory of the case–that this was all a misunderstanding or a coincidence–went well beyond the evidence that was presented. The defense argued that the State had failed to prove the charges beyond a reasonable doubt and pointed out where it thought that the evidence was lacking.

¶ 16     After hearing the arguments, the trial court found defendant guilty of unlawful possession of firearm ammunition by a felon (count I) and the theft of McKee's driver's license (count III) and not guilty of the theft of Trejo's vehicle (count II). In so doing, the trial court commented:

"Okay. The State isn't required to–to bring everybody into court that may have driven Mr. Cameron's car at one time or another. Mr. Bone did not appear. Mr. Kenny Mac did not appear. I haven't heard–there's no corroboration that anybody else drives the car besides Mr. Cameron.

It's apparently his car. He is responsible for what's in the car. Whether or not the luggage and the–is–belonged to his cousin or not, the police are not required to–the State is not required to present proof that it–that it belongs to somebody else or to Mr. Cameron. It was in Mr. Cameron's car. At the very least, it's up to Mr. Cameron to demonstrate that the–that this luggage belongs to somebody other than him.

Who's this cousin? The–apparently this cousin knows Mr. Cameron well enough that he comes to Galesburg and visits family members, but he won't come to Galesburg to testify on behalf of his nephew [*sic*] and admit that this was his and that the bullets were his?

You know, the State has to prove beyond a reasonable doubt. Granted, the testimony of Mr. Cameron raises a doubt, but it's not reasonable under the circumstances. This maybe could have been rebutted had–had Mr. Bone and Mr. K Mac come into Court and said–testified that, yeah, I was responsible for it, but apparently Mr. Cameron is hanging around with people that may be unsavory and–and–and don't feel that they can be responsible for–for their actions.

Well, and so as a consequence, your good buddy, Mr. Cameron, is gonna take the fall for that because it was his car. The property was found in his car. He is responsible for

what is there.

The bullets are his as far as I can tell. There's no corroboration that it belonged to this cousin who could have been here–here in court and is not, and the same is true of the driver's license. It's simply too coincidental it was in his console. He may not have known. I mean, I admit the fact that Mr. Cameron tells a good story. He may not–he may–everything he said may have been entirely true, but its up to him–him to come forward with some evidence to corroborate what he said. Under the circumstances, it's just not there. Everything else points to him.

Now, with the Amanda Trejo business, I think that whole thing was a little hinky and–and so I don't believe he's guilty of stealing this–this woman's car, so–but with regard to what the police found in his car, I think he's guilty.

So I make a finding of guilty of Counts I and III, but as to Count II, it's too hinky to–to believe that–that he stole that vehicle."

¶ 17   A presentence investigation report (PSI) was ordered and the case was set for sentencing. The PSI showed that defendant was 25 years old, was unmarried, and had one child, with whom he had no contact. Defendant had a high school education and had worked sporadically. Defendant had been convicted of unlawful possession of a controlled substance in a 2004 case, for which he received probation; aggravated unlawful use of a weapon in a 2005 case, for which he received one year of imprisonment; and armed robbery in a 2006 case, for which he was sentenced to seven years' imprisonment. Defendant also had dispositions for various traffic, ordinance-violation, and misdemeanor offenses and had some delinquency adjudications as a minor for burglary and unlawful use of a weapon. The current offenses were committed while defendant was on mandatory supervised release for the prior armed robbery.

¶ 18   A sentencing hearing was held in November 2010. At the start of the hearing, the prosecutor represented to the trial court that his office contacted Letha McKee, the victim of the theft, about restitution and was informed that "she [was] due $200 in restitution." McKee told the prosecutor's office that she had a $100 bill in her purse and that she had to have her driver's license, three social security cards, a hunting license, her firearm owner's identification card, and her credit cards reissued, which amounted to approximately $200. Defense counsel did not object to that representation.

¶ 19   The State presented no evidence in aggravation, other than the information contained in the PSI. Defendant presented the testimony of Nicole Empson in mitigation. Empson testified that she had known defendant for eight or nine months and that they were engaged. Empson stated that defendant was generally a happy person and that he did what he could to help her and her children. On cross-examination, however, Empson acknowledged that at one point in their relationship, she thought defendant was using drugs because his behavior had changed. Empson also acknowledged that at one point, she had obtained an order of protection against defendant because he had been sending her mean text messages.

¶ 20   The State represented to the trial court that any sentence defendant received was required to be consecutive to the sentence defendant was already serving in the Department of Corrections (DOC) for the prior armed robbery. Defense counsel did not object or disagree

with that representation. The parties agreed that defendant was ineligible for probation because of his prior armed robbery conviction. The State recommended that both of defendant's convictions in the present case be ordered to run consecutively to each other and that defendant be given an extended-term sentence on the conviction for unlawful possession of firearm ammunition by a felon. Defense counsel recommended that the two convictions in this case be ordered to run concurrently and that defendant not be given an extended-term sentence.

¶ 21 After hearing the evidence, the recommendations, and defendant's statement in allocution, the trial court sentenced defendant to seven years' imprisonment for the ammunition conviction and one year of imprisonment for the theft conviction. The terms of imprisonment were ordered to run consecutively to each other and to defendant's unexpired DOC sentence for the prior armed robbery. In making its sentencing decision, the trial court stated:

"All right. Well, unfortunately, you have a really serious prior history, criminal history, stretching over ten years back, starting with a burglary as a juvenile, culminating in a–in the armed robbery which was a serious offense back in '06.

You have had multiple charges involving weapons, unlawful use of weapons, aggravated unlawful use of weapons and then, of course, the–the present one, unlawful possession of firearm ammunition by a felon. That's the most serious, especially coming on the heels of the armed robbery.

Of course, you're looking at a three to fourteen-year prison sentence. If this was your first offense, it would be an entirely different matter, but it's the third one involving weapons and bullets. As a consequence of that, the–the Court has to view that as–as significant.

Because of that also, I think that the State is right to argue that there was a–that there was threatened serious harm because you're a felon and because no good explanation has been offered concerning these bullets, and they were found to be in your possession as I found at the bench trial.

As a consequence, Factor No. 1 [in aggravation] is available for the State. No. 3, I've already made mention of the criminal record. No. 7, it is necessary that the–that I have to take into consideration the–the deterrent effect of the sentence that I impose on others, and finally, that these offenses were committed when you were on mandatory supervised release. You were under the requirement to not–not commit any–any further crimes and, of course, you were charged with these two and then found guilty of them.

On your side, I don't find any–I don't find the presence of any serious factors. The only thing that I can see that is in you side–on your–in your favor is the fact that you graduated from high school. That kind of sets you apart a little bit from most of the people that I see, but that isn't a–a–a serious factor in mitigation.

As a consequence of that, you understand that probation is not available to you. This involves a Department of Corrections sentence.

*** You're looking at a three to fourteen-year prison sentence. The sentences have to be consecutive to the reason you're back in the Department of Corrections right now.

* * *

Okay. With regard to Count I, the unlawful possession of firearm ammunition by a felon, I'm going to impose a seven year prison sentence in lieu of–instead of the ten year [recommended by the State] because we're not talking about weapons so much as we're talking about bullets. It's still a serious charge, and I think seven years is an appropriate sentence.

I will impose a consecutive sentence in Count II for the–or Count III, rather, for the theft because those are two separate offenses. They were unrelated to one another, and I think it's only appropriate that you–that you serve consecutive sentences, and I will impose the three-year term which was recommended by the–by the State.

I will also impose restitution of $200. I don't know what the chances of–of that, but it seems to me to be appropriate that when you get out of the Department of Corrections, you reimburse the victim for the loss she suffered."

¶ 22    In addition to the terms of imprisonment and restitution, defendant was required to pay various fines, fees, and costs and was given credit for 172 days of presentence incarceration. Defendant filed a motion for new trial, alleging that he was not proven guilty beyond a reasonable doubt of the theft charge. Defendant also filed a motion to reconsider sentence, alleging that his sentence was excessive. After a hearing, both of the motions were denied. Defendant appealed.

¶ 23                                   ANALYSIS

¶ 24    On appeal, defendant argues first that the trial court improperly shifted the burden of proof to him at his bench trial in violation of his due process rights. In support of that argument, defendant asserts that numerous unambiguous statements made by the trial court when it found defendant guilty indicate that the trial court believed that defendant was required to come forward with proof of his innocence and also demonstrate that the trial court erroneously placed the burden of proof on defendant. Defendant recognizes that this issue may have been forfeited because trial counsel did not object to the comments at trial or raise the issue in a posttrial motion but argues that we should reach the merits of this issue, nevertheless, because the issue involves the conduct of the trial court itself or, alternatively, as a matter of plain error.

¶ 25    The State argues first that no error occurred and that the trial court's comments do not establish that the trial court improperly shifted the burden of proof to defendant but, rather, show that the trial court was merely explaining its credibility determination and the deficiencies it found in defendant's theory of the case. In the alternative, the State argues that any error that occurred was forfeited and that plain error review does not apply in this case.

¶ 26    The first step in plain-error analysis is to conduct a substantive review of the issue to determine whether an error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). Whether the trial court applied the correct legal standard is a question of law, which is subject to a *de novo* standard of review on appeal. See *People v. Campos*, 349 Ill. App. 3d 172, 176 (2004).

¶ 27    Due process requires that the State bear the burden of proving beyond a reasonable doubt all of the elements of the charged offense. *People v. Howery*, 178 Ill. 2d 1, 32 (1997). That burden of proof remains on the State throughout the entire trial and never shifts to the defendant. *Howery*, 178 Ill. 2d at 32. The defendant is presumed innocent throughout the course of the trial and does not have to prove his innocence, testify, or present any evidence. See *People v. Devine*, 295 Ill. App. 3d 537, 544 (1998); *People v. Bradley*, 70 Ill. App. 2d 281, 286-87 (1966); Illinois Pattern Jury Instructions, Criminal, Nos. 2.03, 2.04 (4th ed. 2000); Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 28    The trial court is presumed to know the law regarding the burden of proof and to apply it properly. *Howery*, 178 Ill. 2d at 32. That presumption, however, may be rebutted when the record contains strong affirmative evidence to the contrary. *Howery*, 178 Ill. 2d at 32. In ruling upon an allegation such as the one in the present case, the reviewing court must determine whether the record contains strong affirmative evidence that the trial court incorrectly allocated the burden of proof to the defendant. *Howery*, 178 Ill. 2d at 32-33. The trial court's efforts to test, support, or sustain the defense's theories cannot be viewed as improperly diluting the State's burden of proof or improperly shifting that burden to the defendant. See *Howery*, 178 Ill. 2d at 35. The trial court is free to comment on the implausibility of the defense's theories, as long as it is clear from the record that the trial court applied the proper burden of proof in finding the defendant guilty. *Howery*, 178 Ill. 2d at 34-35.

¶ 29    In the present case, after reviewing the record, we find that it does not contain strong affirmative proof that the trial court erroneously diluted the State's burden of proof or shifted that burden of proof to defendant. See *Howery*, 178 Ill. 2d at 32-35; *Bradley*, 70 Ill. App. 2d at 286-87. The trial commented upon the State's evidence and theories, the defendant's evidence and theories, and the burden of proof in arriving at its decision. The trial court's comments about defendant's testimony and about evidence or witnesses that were not presented merely indicate that the trial court thoroughly considered and tested defendant's theories and credibility in deciding this case. As the record is clear that the trial court knew and properly applied the burden of proof, those comments do not support a claim that the trial court erroneously shifted the burden to defendant. See *Howery*, 178 Ill. 2d at 34-35. Therefore, we reject defendant's argument on this issue. Having determined that no error occurred, we need not consider further the parties' arguments on this issue about forfeiture and plain error.

¶ 30    As his second point of contention on appeal, defendant argues that he was not proven guilty beyond a reasonable doubt of the theft of Letha McKee's driver's license. Defendant asserts that the State presented no evidence to prove that he knowingly obtained control over McKee's driver's license, that he knew the driver's license was stolen, or that he intended to deprive McKee permanently of her driver's license. The State argues that strong circumstantial evidence was presented in this case and that the evidence was sufficient to prove defendant guilty.

¶ 31    Pursuant to the *Collins* standard (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)), a reviewing court faced with a challenge to the sufficiency of the evidence must view the evidence in a light most favorable to the prosecution and determine whether any rational trier

of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 280 (2009). The reviewing court will not retry the defendant. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). Determinations of witness credibility, the weight to be given testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact, not the reviewing court. See *Jimerson*, 127 Ill. 2d at 43. Thus, the *Collins* standard gives " 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Jackson*, 232 Ill. 2d at 281 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This same standard of review is applied by the reviewing court regardless of whether the evidence is direct or circumstantial, or whether defendant received a bench or a jury trial, and circumstantial evidence meeting this standard is sufficient to sustain a criminal conviction. *Jackson*, 232 Ill. 2d at 281; *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000). In applying the *Collins* standard, a reviewing court will not reverse a conviction unless the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt of the defendant's guilt. *Jackson*, 232 Ill. 2d at 281; *People v. Flowers*, 306 Ill. App. 3d 259, 266 (1999).

¶ 32    To sustain the charge of the theft of McKee's driver's license in the present case, the State had to prove the following four elements beyond a reasonable doubt: (1) that McKee was the owner of the driver's license; (2) that defendant knowingly obtained control over the driver's license; (3) that defendant knew that the driver's license had been stolen or obtained control of it under such circumstances as would reasonably induce him to believe that it was stolen; and (4) that defendant intended to deprive McKee permanently of the use or benefit of the driver's license. See 720 ILCS 5/16-1(a)(4)(A) (West 2010); Illinois Pattern Jury Instructions, Criminal, No. 13.24 (4th ed. 2000); *People v. Price*, 221 Ill. 2d 182, 189-90 (2006). Possession of an item, such as stolen property, may be actual or constructive. *People v. Mertens*, 77 Ill. App. 3d 791, 795 (1979). A person has constructive possession of an item when he has immediate and exclusive control over the area where the item is located. *Mertens*, 77 Ill. App. 3d at 795. The knowledge and intent necessary for a theft charge need not be proven by direct evidence and may, instead, be proven indirectly by inference or by deduction made by the trier of fact based upon the facts and circumstances of the case. *Mertens*, 77 Ill. App. 3d at 795.

¶ 33    In the present case, there is no dispute that McKee was the owner of the driver's license. The only elements in dispute are the second, third, and fourth elements of the theft charge–control, knowledge, and intent. The evidence presented at the trial established that McKee's license was stolen from her car when she was in the Farm King store; that the suspect vehicle was parked next to McKee's vehicle at Farm King when she left her purse in her vehicle and entered the store; that the suspect vehicle was gone from the store's parking lot when McKee returned to her vehicle and discovered that her purse, with her license in it, had been stolen; that about 10 days after McKee's driver's license was stolen, it was found by the police in the center console of defendant's vehicle after a traffic stop was made on the vehicle, which was being driven by defendant at the time and was registered to defendant; and that McKee's description of the suspect vehicle as a white Chevrolet with chipped paint was identical to a description of defendant's vehicle. Viewed in the light most

favorable to the State, that evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Defendant's possession of the license in his vehicle, either actual or constructive, was sufficient to establish control and, along with the other facts and circumstances of this case, was sufficient to establish by inference that defendant had the requisite knowledge and intent sufficient to support the theft charge. See *Mertens*, 77 Ill. App. 3d at 795. Those inferences were further corroborated by defendant's improbable version of events–that he had no knowledge of the driver's license in his center console and that he loaned his vehicle to persons whose real names and addresses he did not know. Although defendant was not required to testify, once he elected to do so and provided an explanation of his possession of the stolen driver's license, his explanation was subject to the same credibility determination as that of any other witness. See *Mertens*, 77 Ill. App. 3d at 797 ("[a] defendant who elects to explain his possession of stolen property must offer a reasonable story or be judged by its improbability"). We will not retry this case on appeal or substitute our judgment for that of the trier of fact on such matters as witness credibility and the weight to be given evidence. *Jimerson*, 127 Ill. 2d at 43.

¶ 34    As his third point of contention on appeal, defendant argues that the trial court erred in ordering restitution of $200. Defendant asserts that the restitution amount was not statutorily authorized because defendant was only charged with, and convicted of, the theft of McKee's driver's license, not the theft of McKee's purse or the other items in McKee's purse, and there was no proof that McKee suffered actual out-of-pocket losses of $200 for the driver's license alone. Defendant asks that this case be remanded for a new restitution hearing to determine the correct amount of McKee's actual out-of-pocket losses, if any. The State argues that the trial court's ruling was proper and should be affirmed.

¶ 35    In general, a trial court's determination on restitution, like other sentencing issues, will not be reversed on appeal absent an abuse of discretion. See *People v. Jones*, 145 Ill. App. 3d 835, 839 (1986). However, when the issue before the reviewing court is whether a restitution order is authorized by statute, such as in the present case, that issue is a question of law, which is subject to a *de novo* standard of review on appeal. See *People v. Felton*, 385 Ill. App. 3d 802, 805 (2008).

¶ 36    Under section 5-5-6 of the Unified Code of Corrections (Unified Code), a crime victim is entitled to recover restitution for the actual out-of-pocket losses that were proximately caused by the criminal conduct of the defendant. 730 ILCS 5/5-5-6(a), (b) (West 2010); *People v. Ensley*, 132 Ill. App. 3d 842, 844 (1985). The trial court may order restitution for losses incurred by the same victim as the result of the same criminal conduct of the defendant, even if those losses were not set forth in the charging instrument. *Ensley*, 132 Ill. App. 3d at 844. Thus, where a defendant is convicted of theft for the initial taking of items from the victim's possession, losses for items that were taken as part of the same theft but were not specifically listed in the charging instrument may be included in a restitution order because the theft of multiple items from one victim involves a single course of conduct that constitutes one offense of theft. See *People v. McClard*, 359 Ill. App. 3d 914, 917 (2005). However, when a defendant is convicted of theft by possession of stolen property, absent an agreement to the contrary or evidence linking defendant to the initial taking of the property, the defendant may not be required to pay restitution for the losses associated with the initial

-11-

taking but, rather, may only be required to pay restitution for those losses associated with all of the stolen items that were in defendant's possession, even if some of those items were not listed in the charging instrument. See *People v. Hernandez*, 236 Ill. App. 3d 983, 985-86 (1992) (defendant who had agreed to pay restitution as part of plea agreement to theft by possession of stolen property charges in exchange for dismissal of residential burglary charges could not be ordered to pay restitution for the losses sustained in the residential burglaries in which the property that ended up in defendant's possession was initially taken); *Ensley*, 132 Ill. App. 3d at 844; *McClard*, 359 Ill. App. 3d at 917.

¶ 37    In the present case, defendant was convicted of theft by possession of stolen property–McKee's stolen driver's license. Defendant was not charged with, or convicted of, a criminal offense in relation to the initial taking of the purse or the driver's license from McKee's vehicle. As such, defendant could only be ordered to pay restitution for those losses associated with his possession of the stolen driver's license. See *Hernandez*, 236 Ill. App. 3d at 985-86. Defendant could not be ordered to pay restitution for those losses associated with the initial taking of the purse and its contents from McKee's vehicle. See *Hernandez*, 236 Ill. App. 3d at 985-86. Therefore, the restitution order must be vacated and this case remanded for a new restitution hearing to determine the amount of out-of-pocket losses, if any, that were caused to McKee by defendant's possession of the stolen license only and not the costs of replacing the other items or the missing money. See *Hernandez*, 236 Ill. App. 3d at 986.

¶ 38    As his fourth point of contention on appeal, defendant argues that the trial court erred in imposing consecutive sentences upon him. The parties agree that mandatory consecutive sentencing does not apply and that this issue involves only a question of permissive consecutive sentencing. Defendant asserts that consecutive sentences were improper because the trial court never found that consecutive sentences were necessary to protect the public from defendant as required by the statute and because there was no basis for such a finding in the record. Defendant asks that we modify his sentences on appeal to concurrent terms of imprisonment. The State argues that the imposition of consecutive sentences was proper and should be affirmed.

¶ 39    A trial court's sentencing decisions will not be altered on appeal absent an abuse of discretion. *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *People v. Hartzol*, 222 Ill. App. 3d 631, 650 (1991) (trial court's decision to impose consecutive sentences will not be reversed on appeal absent an abuse of discretion). Although the reviewing court may reduce a sentence where an abuse of discretion has occurred (Ill. S. Ct. R. 615(b)(4)), in reviewing the propriety of a sentence, the reviewing court should proceed with great caution and care and must not substitute its judgment for that of the trial court merely because the reviewing court would have weighed the factors differently (*Streit*, 142 Ill. 2d at 19).

¶ 40    Section 5-8-4 of the Unified Code provides, in pertinent part, that the trial court may impose consecutive sentences:

"[i]f, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant." 730 ILCS

-12-

5/5-8-4(c)(1) (West 2010).

Although the statute states that the basis for such a finding shall be set forth in the record (see 730 ILCS 5/5-8-4(c)(1) (West 2010)), our supreme court has held that the trial court is not required to recite the specific language of the statute in determining that consecutive sentences are necessary (see *People v. Hicks*, 101 Ill. 2d 366, 375 (1984)). Rather, " '[w]hat is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public.' " *Hicks*, 101 Ill. 2d at 375 (quoting *People v. Pittman*, 93 Ill. 2d 169, 178 (1982)).

¶ 41      After a review of the record in the present case, we find no indication that the consecutive sentences were motivated by the trial court's belief that they were required for the protection of the public. See *Hicks*, 101 Ill. 2d at 375; *People v. Span*, 337 Ill. App. 3d 239, 241 (2003). Although the trial court considered the nature and circumstances of the current offenses and the history and character of defendant, it did so as part of its evaluation of the factors in aggravation and mitigation. It does not appear that the trial court considered that information in the context of a consecutive-sentencing decision or that the trial court ever determined that consecutive sentences were required to protect the public from further criminal conduct by defendant. Therefore, we modify defendant's sentences and order that the terms of imprisonment imposed upon defendant for the two current offenses shall be served concurrently with each other and concurrently with defendant's unexpired DOC sentence for his prior armed robbery conviction.

¶ 42      As his final contention on appeal, defendant argues and the State concedes that he is entitled to a certain monetary credit against his fines for the time he spent in presentence custody and to a recalculation of his Violent Crime Victims Assistance Fund assessment. Accordingly, we find that defendant is entitled to a monetary credit of $860 for the time he spent in custody, which should be applied to satisfy in full his $5 teen court fee, his $5 drug court fee, and his $5 child advocacy center fee, which have all been held by the courts to be "fines," rather than "fees," for the purpose of the monetary credit. See *People v. Paige*, 378 Ill. App. 3d 95, 103 (2007) (teen court fee was determined to be a fine); *People v. Sulton*, 395 Ill. App. 3d 186, 193 (2009) (drug court fee was determined to be a fine); *People v. Jones*, 397 Ill. App. 3d 651, 664 (2009) (child advocacy center fee was determined to be a fine). In addition, because fines were imposed, defendant's Violent Crime Victims Assistance Fund assessment should only be $4 and not the $20 that was actually imposed. See 725 ILCS 240/10(b), (c)(2) (West 2010). The circuit clerk is ordered to make the listed changes.

¶ 43      For the foregoing reasons, we affirm defendant's convictions, modify the trial court's sentencing order to make the terms of imprisonment imposed for those two convictions run concurrently to each other and to defendant's unexpired DOC sentence, vacate the trial court's order of restitution, and remand this case for a restitution hearing, if necessary, and for further proceedings consistent with this opinion.

¶ 44      Affirmed in part, modified in part, and vacated in part; cause remanded.