2020 IL App (1st) 172022-U

No. 1-17-2022

Order filed May 7, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 4670 |
| | ) | |
| CHRON HOLLIS, | ) | Honorable |
| | ) | Raymond Myles, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for aggravated unlawful use of a weapon is affirmed over his contentions that the trial court (1) improperly sustained certain objections during cross-examination of the State's witnesses, and (2) shifted the burden of proof to defendant by accepting the State's argument that it was "on the [defense]" to call a witness.

¶ 2     Following a bench trial, defendant Chron Hollis was found guilty of aggravated unlawful use of a weapon (AUUW) and sentenced to one year in prison.[1] On appeal, defendant contends the trial court improperly sustained the State's objections during his cross-examination of the State's witnesses, which prevented him from explaining his flight from the police. He further contends that the trial court erred by accepting the State's argument that it was "on the [defense]" to call a witness, thus shifting the burden of proof to defendant. We affirm.

¶ 3     Defendant was charged with four counts of AUUW following his March 10, 2015 arrest. Relevant here, count I alleged that defendant knowingly carried in a vehicle, while not on his land or abode, legal dwelling, fixed place of business, or on another's land or legal dwelling as an invitee with that person's permission, an uncased, loaded, and immediately accessible handgun and did not have a valid concealed carry license at that time. See 720 ILCS 5/24-1.6(a)(1), (3)(a-5) (West 2014).

¶ 4     Officer Miranda testified that he and his partner were patrolling the 7000 block of South Wabash Avenue in Chicago around 4:55 p.m. on March 10, 2015, when he observed a seatbelt violation in another vehicle.[2] Miranda curbed the vehicle, but it drove away as Miranda exited his squad car. The officers pursued the vehicle and observed it collide with another vehicle and then a building. The driver immediately fled on foot. Miranda identified defendant in court as the driver. The passenger, Kevin Spratt, appeared "stunned" and took "awhile" to exit the vehicle. Miranda chased defendant and his partner chased Spratt.

_____

[1] Judge Myles passed away after presiding over the trial. Judge Steven G. Watkins conducted the hearing on defendant's motion and amended motion for a new trial and sentenced defendant.

[2] Officer Miranda's given name is not included in the report of proceedings.

¶ 5 After a brief pursuit, Miranda lost sight of defendant. He sent a flash message describing defendant as a "[m]ale black wearing all black," and helped his partner detain Spratt. Miranda examined defendant's vehicle and recovered a loaded firearm with an extended magazine and defaced serial number from the driver's side floorboard. Miranda identified defendant after fellow officers detained him and returned him to the scene. Miranda "ran" the name defendant gave to the officers, finding "no results" for either a Firearm Owners Identification (FOID) card or a concealed carry license.

¶ 6 During cross-examination, Miranda testified that Spratt was not wearing a seatbelt and he did not see a firearm "on" either man. Miranda described the two collisions as high impact. He observed the firearm on the floor near the accelerator and brake and was not sure if any fingerprints were recovered from it. Counsel then asked whether, while preparing the arrest report, Miranda learned if defendant had a warrant for his arrest. The State objected as to relevance and the court sustained the objection. Counsel argued that the existence of a warrant was "relevant as to why [defendant] may have fled." The State responded, "then [defendant] should testify." The court again sustained the objection.

¶ 7 Officer Smycz testified that he and his partner were on the 7500 block of Perry Avenue when they responded to the flash message.[3] Soon afterwards, they spoke to a witness who observed a person matching the suspect's description enter a yard and "get rid of his clothes." The officers went to the address and observed a person exiting the gangway. Smycz identified defendant in court as that person. The officers detained defendant and brought him, along with a black hoody

---

[3] Officer Smycz's given name is not included in the record on appeal.

and black hat, to the scene of the crash. There, defendant was identified by Miranda. Later, at a police station, defendant asked for the hat and hoody.

¶ 8    During cross-examination, Smycz testified that he "ran" the name defendant provided and found no warrants. After defendant's fingerprints were processed, Smycz learned defendant's actual name. He did not run a background check on defendant's actual name. Defense counsel then asked whether anyone had run a background check on defendant's real name. The State objected and the trial court sustained the objection.

¶ 9    The State entered a stipulation that at the time of this incident, defendant had not been issued either a FOID card or a concealed carry license.

¶ 10   The defense moved for a directed finding and argued that although defendant was driving, there was no evidence that the vehicle was registered to him, there were two occupants, and the firearm ended up on the floorboard after two high-impact collisions. The defense further posited that it would be difficult to drive with anything on the floorboard and the firearm may have landed there after the collisions. Moreover, both defendant and Spratt fled, the firearm was not tested for fingerprints, and Spratt did not testify that defendant had a firearm.

¶ 11   The State responded that defendant sped away from the officers because he had a loaded firearm in the vehicle and this flight indicated guilt. The State noted that as soon as the vehicle hit the building, defendant "took off," whereas Spratt "took awhile" to exit. The trial court asked why Spratt left the vehicle, and the State responded that it had "no idea." When the court said that the defense theory was that Spratt's flight indicated guilt, the State posited that Spratt did not want to be associated with defendant and noted that the defense was "able to subpoena witnesses [just] as easily." The court answered, "[r]ight." The State added, "it's on them to go ahead and subpoena

that particular witness." The State further argued that both of the vehicle's occupants could be guilty of possessing the firearm. The trial court denied the motion for a directed finding, and the defense rested without presenting evidence or witnesses.

¶ 12     In closing argument, the defense argued there was no way to determine which occupant of the vehicle the firearm belonged to because it was not fingerprinted. Additionally, defendant made no statements about the firearm and did not remove it from the vehicle, and Spratt did not testify that defendant had a firearm. Counsel further posited that defendant did not want to be identified because he had a warrant for his arrest.

¶ 13     The State argued that no evidence established the vehicle was stolen and "[w]e know that there was no warrant out for [defendant's] arrest." The defense objected, noting that the testimony showed there was no warrant under the false name. The court overruled the objection. The State listed the signs of defendant's guilt, including that he fled a "routine" traffic stop, hit another vehicle and a building, fled on foot, gave a fake name, and was not accurately identified until after he was fingerprinted. Additionally, the firearm was recovered from the driver's side floorboard and, at best, defendant and Spratt jointly possessed it.

¶ 14     The court found defendant guilty of count I for AUUW, and not guilty of the other three counts. The court noted that although no one saw defendant with a firearm, he fled the initial traffic stop, and flight can show "knowledge of a crime being committed." Moreover, the firearm was recovered from the vehicle's driver's side "where defendant was last seen."

¶ 15     Defendant filed a motion and amended motion for a new trial. The amended motion alleged, in pertinent part, that the State improperly stated that defendant did not have a warrant for

his arrest which impacted the trial court's conclusion that his flight indicated or implied guilt.[4] At the hearing on the motion, trial counsel argued that the State erred during closing argument when it argued that defendant did not have a warrant for his arrest when he did, and that in finding defendant guilty, the trial court "implied" that flight was a reason. Counsel further argued that no one saw defendant with a firearm and Spratt fled and did not testify at trial.

¶ 16   In denying the motion, the posttrial judge noted that the trial judge reasonably found that the evidence of flight was "proof of a conscientiousness of guilt or knowledge of a crime." Following a hearing, the court sentenced defendant to one year in prison. Defendant filed a timely notice of appeal.

¶ 17   On appeal, defendant contends that the trial court erred when it sustained the State's objections during cross-examination of the State's witnesses to questions regarding whether defendant had an outstanding arrest warrant at the time of this incident. He argues that this unrelated warrant explained his flight from the police and rebutted any inference of consciousness of guilt based on knowledge that a loaded firearm was in the vehicle.

¶ 18   Defendant concedes that he has forfeited review of this claim because he failed to raise it in a posttrial motion and asks this court to review it pursuant to the plain error doctrine. A reviewing court may consider an unpreserved error where a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process,

---

[4] The amended motion for new trial is not included in the record on appeal, but the trial court summarized its content at the hearing thereon.

regardless of the closeness of the evidence." (Internal quotation marks omitted) *People v. Sebby*, 2017 IL 119445, ¶ 48. The first step is to determine whether a clear or obvious error occurred. *Id.* ¶ 49.

¶ 19    A defendant has the constitutional right to confront the witnesses against him. *People v. Arze*, 2016 IL App (1st) 131959, ¶ 113. This right includes the cross-examination of witnesses. *Id*. However, the right to cross-examine witnesses is not absolute. *People v. Rendak*, 2011 IL App (1st) 082093, ¶ 23. The trial court, therefore, "has discretion to impose reasonable limits on cross-examination to limit possible harassment, prejudice, jury confusion, witness safety, or repetitive and irrelevant questioning." *People v. Tabb*, 374 Ill. App. 3d 680, 689 (2007); see also *People v. Campbell*, 2012 IL App (1st) 101249, ¶ 56 (a trial court may limit questions of minimal relevance). The limits placed on cross-examination rest within the sound discretion of the trial court, and it abuses its discretion only when its limitations result "in manifest prejudice to the defendant." *People v. Hall*, 195 Ill. 2d 1, 23 (2000). "[U]nless the defendant can show his or her inquiry is not based on a remote or uncertain theory, a court's ruling limiting the scope of examination will be affirmed." *Tabb*, 374 Ill. App. 3d at 689.

¶ 20    "It is well recognized that the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court." *People v. Andrews*, 146 Ill. 2d 413, 420-21 (1992). An offer of proof is important both because it discloses to the trial court and opposing counsel the nature of the offered evidence, enabling them to take appropriate action, and because it provides a reviewing court with a record to determine whether exclusion of the evidence was erroneous and harmful. *People v. Thompkins*, 181 Ill. 2d 1, 10 (1998); see also *People v. Pelo*, 404 Ill. App. 3d 839, 875 (2010) (quoting *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 773 (2002) ("When a

defendant claims that he has not been given the opportunity to prove his case because the trial court improperly barred evidence, he 'must provide [the] reviewing court with an adequate offer of proof as to what the excluded evidence would have been.' ")). The failure to make an adequate offer of proof results in forfeiture of the issue on appeal. *Andrews*, 146 Ill. 2d at 422; see also *People v. Evans*, 373 Ill. App. 3d 948, 966 (2007) ("Failing to make an adequate offer of proof results in a waiver of the issue on appeal.").

¶ 21    In the case at bar, defense counsel did not make an offer of proof to the trial court as to whether defendant had an unrelated arrest warrant on the date of the incident. Absent such an offer of proof, we cannot determine whether a warrant existed or whether the exclusion of that evidence was proper. *Andrews*, 146 Ill. 2d at 421-22. Because defendant has failed to establish that the trial court abused its discretion when it limited his cross-examination of the State's witnesses (*Hall*, 195 Ill. 2d at 23), he cannot establish error (*Sebby*, 2017 IL 119445, ¶¶ 48-49). Accordingly, his procedural default must be honored.

¶ 22    Defendant next contends that during argument on his motion for a directed finding, the trial court improperly shifted the burden of proof in accepting the State's position that it was "on the [defense]" to call Spratt to testify that the firearm solely belonged to him. Defendant acknowledges that he failed to object in a posttrial motion and has forfeited this claim on appeal. However, he asks this court to review his claim pursuant to the plain error doctrine as the evidence at trial was closely balanced. See *Id.* ¶ 48.

¶ 23    In a criminal proceeding, the State has the burden of proving each element of the offense beyond a reasonable doubt and this burden never shifts to the defendant; rather, a defendant is presumed innocent and does not have to prove his innocence, testify, or present any evidence.

*People v. Cameron*, 2012 IL App (3d) 110020, ¶ 27. The trial court's efforts to test, support, or sustain the defense's theories, however, cannot be viewed as diluting the State's burden of proof or shifting that burden to the defendant. *People v. Howery*, 178 Ill. 2d 1, 34-35 (1997). The trial court is presumed to know the law, including the allocation of the burden of proof, and to apply it properly absent a strong affirmative showing to the contrary in the record. *Id*. at 32-33.

¶ 24 In support of his argument, defendant relies on an exchange between the trial court and the State during the argument on the motion for a directed finding. The defense asserted, in pertinent part, that both defendant and Spratt fled after the vehicle collided with a building and Spratt did not testify that defendant had a firearm. The State responded that defendant immediately fled after the collision whereas Spratt "took awhile" to exit the vehicle. At this point, the trial court asked the State why Spratt exited the vehicle and after the State demurred, noted that the defense theory was that Spratt's flight exhibited guilt. The State then suggested that Spratt did not want to be associated with defendant and that the defense could "subpoena witnesses [just] as easily" as the State. The court responded, "[r]ight," and the State concluded that "it's on them to go ahead and subpoena that particular witness." After further argument, the court denied the motion for a directed finding.

¶ 25 Viewing the colloquy in context, we find that the record lacks affirmative proof that the trial court erroneously shifted the burden of proof to defendant. Rather, the trial court asked the State to respond to the defense's argument that Spratt ran because he possessed the firearm recovered from the vehicle. The fact that the trial court replied "[r]ight" to the State's argument that the defense could have subpoenaed Spratt does not establish that it shifted the burden of proof to defendant. *Cameron*, 2012 IL App (3d) 110020, ¶ 28 ("The trial court is free to comment on the

implausibility of the defense's theories, as long as it is clear from the record that the trial court applied the proper burden of proof in finding the defendant guilty."). Moreover, we are not persuaded that the mere fact that the trial court ultimately denied the motion for a directed finding is affirmative evidence that the court shifted the burden of proof to defendant when the evidence established that he fled from police in a vehicle and on foot, a firearm was recovered from his vehicle, and he gave a false name following his arrest. See *People v. Hendricks*, 137 Ill. 2d 31, 63 (1990) (the court should deny a motion for a directed finding when a reasonable mind could fairly accept the guilt of the accused beyond a reasonable doubt, considering the evidence most strongly in the State's favor). The trial court may draw or reject inferences based on the evidence and is presumed to know the law (*Howery*, 178 Ill. 2d at 32-33), and its single comment, made during the State's argument on the defendant's motion for a directed finding, does not support a claim that it erroneously shifted the burden of proof to defendant. Having determined that no error occurred, defendant cannot establish plain error (*Sebby*, 2017 IL 119445, ¶¶ 48-49), and his contention must fail.

¶ 26    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.